Perma-Stone Corporation, Respondent, vs. Merkel and wife, Appellants.

*October 13—November 15, 1949.*

*Clarence J. O'Brien* of Milwaukee, for the appellants.
*Harvey E. Kaiser* of Milwaukee, for the respondent.

FRITZ, J.    On this appeal it suffices to note the following. The contract for the Veritone Perma shingles, which were to be used by plaintiff to re-cover defendants' residence under the contract between the parties, was subject to the Federal Emergency Price Control Act and the federal regulations made thereunder as to the ceiling price and other matters by the federal Office of Price Administration.   In defendants' answer they alleged as special defenses in connection with other matters of defense,—

"1. That the plaintiff misrepresented the prevailing cost of work and material on this job and thereby induced the defendants to sign the agreement relying upon representations made as to cost and quality of material which they would have not otherwise signed if it was not for the fraudulent representations.

"2. That the agreement set forth as Exhibit 'A' is indefinite and unenforceable.

"3. That the amount of the contract was in excess of the amount authorized by federal law which is administered by the Civilian Production Administration in effect at the time of this agreement and in excess of the ceiling price on the same or similar materials permitted to be charged under regulations issued by the Office of Price Administration."

On the trial plaintiff's salesman, Joe Levin, who induced defendants to sign a contract between the parties for materials and work in question, and also required them to sign and deliver to plaintiff a judgment note for the full contract price

of $2,055 before plaintiff furnished any materials or performed any work for defendants, testified on cross-examination by defendants' attorney as follows:

"*Q.* Did you assure those people when you quoted them that price that it was the regular prevailing market price for that kind of work in Milwaukee county? *A.* I believe we have stamped on the contract: 'We hereby certify that this invoice is in compliance with maximum price regulation No. 251.'

"*Q.* Was the maximum price regulation a standard price for similar material in Milwaukee county during the month of March, 1946? *A.* I imagine that was the setup, yes.

"*Q.* When you stamped that on the contract did you tell Mr. and Mrs. Merkel they were paying the proper ceiling price for that job? *A.* It is very explanatory there.

"*Q.* Did you tell them that? *A.* Yes, I believe I did say that was within the OPA ceiling.

"*Q.* Did Mr. and Mrs. Merkel accept your statement that it was a fair and reasonable price for the job? *A.* I took it for granted they did when they signed the contract and accepted it and gave me a deposit of $50."

On a redirect examination by plaintiff's attorney, Levin testified:

"*Q.* Was this price you gave them in compliance with all the rules and regulations in compliance that month? *A.* Absolutely.

"*Q.* Were the OPA ceiling prices of the Perma-Stone Company approved and on file with the proper authorities? *A.* Yes, sir."

Although defendants' attorney objected to Levin's conclusion that the price given was in compliance with all OPA rules and regulations, the court ruled that the answer may stand. This ruling was erroneous. Levin's answers in those respects and likewise his answers in his testimony on the cross-examination quoted above, were but his conclusions without any proof as to what had been said or done as basis therefor. Moreover his answers were evasive and unrespon-

sive. And when on the direct examination of the defendant, Mrs. Merkel, her attorney, with the intent to prove plaintiff's violation of the OPA regulations, asked the preliminary question, "Did you make a complaint to the Civilian Production Administration?" plaintiff's objection to the question was sustained by the circuit judge. He apparently was of the erroneous opinion that the OPA ceiling-price regulations were not applicable in this action, although there was stamped on the contract itself the statement,—

"We hereby certify that this invoice is in compliance with maximum price regulation No. 251, a copy of which may be seen at our office.
"Our ceiling price for this job is $———.
"Our contract price for this job is $———."

But the spaces for stating the ceiling price and contract price were left blank without any excuse for the omissions.

Plaintiff's violation of OPA regulations pertaining to prices is a defense in a civil action to recover damages for breach of contract. In *International Spangles Corp. v. Marrow Mfg. Corp.* 294 N. Y. 295, 298, 62 N. E. (2d) 77, the court stated:

"The defendant's position was that the commodity price of $3.50 per pound demanded by the plaintiff violated the provisions of the Price Control Act and the regulation promulgated thereunder. . . .
"The challenge comprised within the defendant's pleading and supported by evidence *cast upon the plaintiff the burden of proving that the price demanded by the plaintiff for the commodity delivered was not in excess of the maximum price fixed in conformity with the requirements of the Price Control Act and the regulation thereunder.* The regulation, section 1 (par. 1499.1) provides that, 'regardless of any contract . . . no person shall sell or deliver any commodity . . . at a price higher than the maximum price permitted by this general maximum price regulation.' The Price Control Act, section 4, subdivision (a), declares it to be unlawful for any person to sell or deliver any commodity in violation of any regulation promulgated under the act."

As stated in *A. B. Lewis Co. v. Jackson* (C. C. A. Texas), 199 S. W. (2d) 853, 856,—

"But under the jury's findings there can be no question that the note and mortgage were taken by appellant in violation of the Emergency Price Control Act. Therefore the note and mortgage were invalid, and the courts will not enforce them. 'The rule is, both under the federal and state authorities, that where parties who are charged with the knowledge of the law . . . undertake to enter a contract in violation thereof they will be left in the position which they put themselves.' "

Consequently, the court's ruling sustaining plaintiff's objection to evidence by which defendants intended to prove plaintiff's violations of the federal Emergency Price Control Act and regulations thereunder, and the court's failure to make any finding on that material issue under the pleadings, constituted error, because of which the judgment must be reversed.

Moreover, under the allegation in defendants' answer,—

". . . that the plaintiff misrepresented the prevailing cost of work and material . . . and thereby induced the defendants to sign the agreement relying upon representations made as to cost and quality of material which they would have not otherwise signed if it was not for the fraudulent representations;" and that the agreement is indefinite and unenforceable,—

there are applicable in this action for plaintiff's recovery of damages for the breach of a contract pertaining to the sale of *roofing* and *siding,* the following provisions in an order which was made by the Wisconsin state department of agriculture under sec. 100.20, Stats., and became effective May 19, 1941, to wit:

"It is ordered that all persons, firms, and corporations, . . . in selling *roofing* and *siding* at retail in Wisconsin, cease and desist from using any methods of competition and trade

practices that mislead or tend to mislead or deceive prospective customers, and particularly the following: . . .

"1. That all contracts or agreements between buyer or seller in which the sale of *roofing* and *siding* at retail is the basis of the contract, shall be in writing and . . . all descriptions and details thereof shall be specified, with particular reference to: . . .

"(d) In the event any promissory note or other evidence of indebtedness is to be signed by the customer, the seller shall fully advise the customer or purchaser as to the nature of the same, its terms and conditions, and shall *furnish and deliver to the customer or purchaser a true and accurate copy thereof at the time it is signed.* The customer shall not be required to sign the note until the work is completed. . . ."

Those provisions have had the force and effect of law since March 23, 1946, and have not been rescinded.

Sec. 328.021, Stats., provides:

"The courts of this state including the supreme court shall take judicial notice of county ordinances in those counties in which they have jurisdiction and of all rules, regulations and orders having the force and effect of law, whether of general application or limited territorial effect, of state boards, commissions and agencies."

In relation to orders made by the state department of agriculture under sec. 100.20, Stats., sec. 100.21, Stats., provides a cause of action for damages because of a violation by any person of any order issued under sec. 100.20, Stats., and sec. 100.26 (3) provides penalties for violations of sec. 100.20 and certain other sections in ch. 100, Stats. In this case plaintiff violated the above-quoted order by requiring the defendants to sign a judgment note for $2,055 at the time and as part of the contract of March 23, 1946, and thereby plaintiff violated also the provision in the order that "the customer shall not be required to sign the note until the work is completed." Because of plaintiff's violation of the order in those respects, the contract in question is void as a matter of law. As stated in *Me-*

*nominee River B. Co. v. Augustus Spies L. &. C. Co.* 147 Wis. 559, 571, 132 N. W. 1118,—

"A contract made in violation of a statute or for performance of an act which is prohibited by statute is void and will not be enforced by the court. This is true whether there is a prohibition and a penalty or merely a prohibition. . . . If any part of the consideration for a promise be illegal, or if there are several considerations for an unseverable promise, one of which is illegal, the promise, whether written or oral, is wholly void, as it is impossible to say what part or which one of the considerations induced the promise. . . . The contract is void if it is only in part connected with the illegal transaction and the promise single or entire." *Beat v. Mickelson,* 220 Wis. 158, 164, 264 N. W. 504.

It follows that the judgment under review must be reversed and the cause remanded with directions to enter judgment dismissing the complaint.

*By the Court.*—Judgment reversed, and cause remanded with directions to enter judgment dismissing the complaint.