STATE of Wisconsin, Plaintiff-Appellant-Petitioner,

v.

EXCEL MANAGEMENT SERVICES, INC., a Wisconsin corporation, Viking Insulation & Waterproofing Corp., a/k/a Viking Corp., and Viking Pools, as Wisconsin domestic corporations, John Picciano, Bob Malec and Robert Kirschman, individually and as officers of Viking and/or Excel Corporations, and Keith Jim Kalland and Mike Rosenthal, individually and as employees of agents of said corporations, Defendants,

FIRST SAVINGS, a Wisconsin savings and loan association, Defendant-Respondent.

Supreme Court

*No. 81–911. Argued January 4, 1983.—Decided March 29, 1983.*

(Also reported in 331 N.W.2d 312.)

For the plaintiff-petitioner the cause was argued by *Bruce A. Craig,* assistant attorney general, with whom on the briefs was *Bronson C. La Follette,* attorney general.

For the defendant-respondent there was a brief by *Anthony J. Caronna* and *Davis, Kuelthau, Vergeront, Stover, Werner & Goodland, S.C.,* attorneys, and *Steven M. Epstein* of *Levine & Epstein,* of counsel, all of Milwaukee, and oral argument by *Mr. Epstein.*

DAY, J. This is a review of an unpublished decision of the court of appeals filed February 23, 1982, which affirmed an order of the circuit court for Waukesha county, John P. Buckley, Judge, granting First Savings' motion to dismiss for failure to state a claim upon which relief could be granted.

The issue to be considered on review is: Do sections 100.18(11)(d) and 100.20(6), Stats. allow the state to

join as a party defendant the assignee of contracts which were allegedly obtained in violation of Chapter Ag. 110, Wisconsin Administrative Code,[1] and secs. 100.18(1) and 100.18(9)(a),[2] Stats. 1979–80, when it

---

[1] Chapter Ag. 110 is an administrative regulation dealing with the sale of home improvements and promulgated under sec. 100.-20(2), Stats.

[2] Section 100.18(1), Stats. reads as follows:

"**Fraudulent advertising.** (1) No person, firm, corporation or association, or agent or employe thereof, with intent to sell, distribute, increase the consumption of or in any wise dispose of any real estate, merchandise, securities, employment, service, or anything offered by such person, firm, corporation or association or agent or employe thereof, directly or indirectly, to the public for sale, hire, use or other distribution, or with intent to induce the public in any manner to enter into any contract or obligation relating to the purchase, sale, hire, use or lease of any real estate, merchandise, securities, employment or service, shall make, publish, disseminate, circulate, or place before the public, or cause, directly or indirectly, to be made, published, disseminated, circulated, or placed before the public, in this state, in a newspaper, magazine or other publication, or in the form of a book, notice, handbill, poster, bill, circular, pamphlet, letter, sign, placard, card, label, or over any radio or television station, or in any other way similar or dissimilar to the foregoing, an advertisement, announcement, statement or representation of any kind to the public relating to such purchase, sale, hire, use or lease of such real estate, merchandise, securities, service or employment or to the terms or conditions thereof, which advertisement, announcement, statement or representation contains any assertion, representation or statement of fact which is untrue, deceptive or misleading."

"Section 100.18(9)(a), Stats. reads as follows:

"**Fraudulent advertising.** . . . (9)(a) It is deemed deceptive advertising, within the meaning of this section, for any person or any agent or employe thereof to make, publish, disseminate, circulate or place before the public in this state in a newspaper or other publication or in the form of book, notice, handbill, poster, bill, circular, pamphlet, letter, sign, placard, card, label or over any radio or television station or in any other way similar or dissimilar to the foregoing, an advertisement, announcement, statement or representation of any kind to the public relating

is not alleged that the assignee engaged in the prohibited activities?

We conclude that an assignee of such contracts may be joined as a party defendant. Accordingly, we reverse the decision of the court of appeals and remand the case to the trial court.

First Savings had been added as a party defendant in an amended complaint filed by the state in a consumer protection action undertaken pursuant to secs. 100.18 (11) (d) and 100.20 (6),[3] Stats. 1979–80.

to the purchase, sale, hire, use or lease of real estate, merchandise, securities, service or employment or to the terms or conditions thereof which advertisement, announcement, statement or representation is part of a plan or scheme the purpose or effect of which is not to sell, purchase, hire, use or lease the real estate, merchandise, securities, service or employment as advertised."

[3] Section 100.18(11) (d), Stats. reads as follows:

"100.18  Fraudulent advertising. . . . (11) . . . (d) The department or the department of justice or any district attorney, upon informing the department of justice, may commence an action in circuit court in the name of the state to restrain by temporary or permanent injunction any violation of this section. The court may in its discretion, prior to entry of final judgment, make such orders or judgments as may be necessary to restore to any person any pecuniary loss suffered because of the acts or practices involved in the action, provided proof thereof is submitted to the satisfaction of the court. The department of justice may subpoena persons, require the production of books and other documents, and may request the department to exercise its authority under par. (c) to aid in the investigation of alleged violations of this section."

Section 100.20(6), Stats. reads as follows:

"Methods of competition and trade practices. . . . (6) The department may commence an action in circuit court in the name of the state to restrain by temporary or permanent injunction the violation of any order issued under this section. The court may in its discretion, prior to entry of final judgment make such orders or judgments as may be necessary to restore to any person any pecuniary loss suffered because of the acts or practices involved in the action, provided proof thereof is submitted to the

On July 24, 1980, the state filed an amended complaint in an action in the circuit court for Waukesha county against Excel Management Services, Inc., Viking Insulation and Waterproofing Corp., certain officers and employees of the corporations (Excel, Viking, et al., are collectively referred to in this opinion as Viking) and First Savings. The complaint requested the trial court restrain by permanent injunction violations of certain consumer protection statutes and administrative rules by Viking. The complaint alleged that certain of the defendants, but not First Savings, had engaged in deceptive practices in the sale of swimming pools. The complaint alleged that the defendants had engaged in the use of "bait and switch"[4] tactics in obtaining sales, had misrepresented the identities of their sales staff,[5] had misrepresented the manufacturer of the pools and had falsely represented the pool as being a "model" with a full twenty year warranty.[6]

satisfaction of the court. The department may use its authority in ss. 93.14 and 93.15 to investigate violations of any order issued under this section."

[4] According to the complaint, "[d]efendants utilized this practice by advertising a swimming pool in the newspaper for a price of approximately $600 to $1,000. When a customer responded to the advertisement, Viking representatives, through the use of poorly constructed models or through other suggestions, discouraged and disparaged the purchase of the advertised pool and switched the customer to a higher-priced pool having an alleged retail price of approximately $7,000."

[5] It is alleged that in order to effectuate the sales techniques that were being used, the sales people would falsely represent themselves to customers as being company executives or distributors who could authorize the sale of the pool for a special reduced price if the customer would permit the pool to be used as a model to be shown to other prospective purchasers.

[6] It is alleged that the warranty was described by Viking representatives as being a *full* twenty year warranty. However, the warranty accompanying the pool was a limited warranty which included a sharply decreasing deductible amount which would

The complaint also requested equitable relief in the form of 1) restoration of pecuniary losses suffered because of the acts and practices involved, 2) reformation of the contracts to reflect the value of what each customer actually received, or 3) a voiding of the contracts with the court then utilizing the doctrine of *quantum meruit* to determine the appropriate value of each pool.[7]

Although the complaint did not allege any involvement by First Savings in the prohibited conduct, it did allege that First Savings had actual knowledge of several of the violations by defendant, Viking. The complaint also alleged that certain customers of Viking had informed First Savings of the use of deceptive practices and that First Savings had prior notice of the practices of certain other defendants who were officers of Viking because First Savings had dealt with those individuals in another business.[8]

The complaint also contains the following allegations, which for the purpose of this review we must assume to be true.

It is alleged that between March and September, 1978, Viking sold 106 swimming pools with total sales of $478,659.66 to Wisconsin residents. Viking had an arrangement with First Savings whereby if a pool purchaser wanted financing, it would be arranged through First Savings. Forty-four of the pool purchases were fi-

---

have to be paid by the purchaser if repair of the pool became necessary.

[7] The complaint also requested civil forfeitures against Viking.

[8] It is alleged that First Savings had a prior association with two basement waterproofing businesses which had been run out of the same location as Viking and which had some of the same officers and employees as Viking. First Savings financed waterproofing work in virtually the same manner it financed swimming pool purchases. Both waterproofing businesses are now defunct. One of them, while in operation, was the subject of a Federal Trade Commission cease and desist order.

nanced by First Savings. The contractual documents were either specified or provided by First Savings. Some of this financing was done in conjunction with second mortgages on customers' homes. The state alleged that this financing arrangement constituted an assignment of Viking's contract rights to First Savings.

The complaint also alleged that Viking is presently without significant financial resources to cover the obligations arising from the contracts.

On August 28, 1980, First Savings filed a number of motions to dismiss. On April 8, 1981, Judge Buckley issued an order granting First Savings' motion to dismiss on the grounds that the complaint failed to state a claim upon which relief could be granted.

The state appealed. On February 23, 1982, the court of appeals issued a decision affirming the trial court's order. The court of appeals concluded that secs. 100.18 (11)(d) and 100.20(6), Stats., allowed the state to seek restoration of pecuniary losses only from those parties found guilty of the acts which secs. 100.18 and 100.20 proscribe. Since First Savings was not charged with violations of those sections, no claim was stated against it.

First Savings initially argues that the attorney general lacks authority to initiate and prosecute this action against First Savings. Citing *Estate of Sharp*, 63 Wis. 2d 254, 260, 261, 217 N.W.2d 258 (1974), it claims the attorney general cannot prosecute an action absent a specific grant of power by the legislature to do so.

However, the statutes cited above specifically grant the attorney general (and the attorney general acting on behalf of the Department of Agriculture, Trade & Consumer Protection) the power to initiate this action.[9]

---

[9] Section 100.18(11)(d) reads: ". . . The department of justice . . . may commence an action. . . ."

The attorney general is given the power to prosecute this action by statute and the holding in *Sharp*, standing alone, would not preclude the attorney general from proceeding with this action.

Both secs. 100.18(11)(d) and 100.20(6) authorize the state to commence an action to enjoin a violation of the respective statutes. In addition to this authorization, each statute contains the following language:

"The court may in its discretion, prior to entry of final judgment make such orders or judgments as may be necessary to restore to any person any pecuniary loss suffered because of the acts or practices involved in the action, provided proof thereof is submitted to the satisfaction of the court."

This language neither expressly requires that restoration of pecuniary losses be made solely by the parties charged with violations of the statute nor does it expressly authorize recovery from a party who has not violated the statute. The language only requires that any court ordered relief serve to restore any pecuniary loss suffered by a person as the result of the acts and practices involved in the action.

Under the statutory scheme considered here, the attorney general is authorized to bring actions to enjoin violations of the statutes. Once such an action is commenced, the trial court may order restoration of pecuniary losses which are suffered as a result of the practices forming the basis for the action.

Individuals, in their own right, may sue to recover pecuniary losses suffered as a result of violations of these

Section 100.20(6) reads: "The department [of Agriculture, Trade and Consumer Protection] may commence an action in circuit court in the name of the state. . . ."

The complaint in this case states that the attorney general is acting "on behalf of the Wisconsin Department of Justice and the Department of Agriculture, Trade and Consumer Protection. . . ."

statutes.[10] As an assignee of the contracts from Viking, First Savings takes each contract "subject to all claims and defenses of the buyer or his successor in interest." Chapter Ag., sec. 110.06(1), Wis. Adm. Code. If individuals brought actions against First Savings seeking recovery for pecuniary losses resulting from violations of these statutes, First Savings as an assignee of the contracts would be a proper defendant.

In determining whether an entity which could properly be joined as a party defendant in actions undertaken by individuals seeking redress for violations of the statutes can be joined in an action undertaken by the state similarly seeking redress for the same violations, resort must be had to the intent of the legislature. *Kollasch v. Adamany*, 104 Wis. 2d 552, 563, 313 N.W.2d 47 (1981).

In construing a statute, the court must consider it "in relation to its scope, history, context, subject matter and object to be accomplished. . ." *Kollasch,* 104 Wis. 2d at 563; *Berns v. Wis. Employment Relation Comm.,* 99 Wis. 2d 252, 265, 299 N.W.2d 248 (1980).

---

[10] Section 100.18(11)(b) . . . 2, Stats. (1979–80), authorizes:

"**Fraudulent advertising.** . . . (11) . . . (b) . . . 2 Any person suffering pecuniary loss because of a violation of this section by any other person may sue in any court of competent jurisdiction and shall recover such pecuniary loss, together with costs, including reasonable attorney fees. Any person suffering pecuniary loss because of a violation by any other person of any injunction issued under this section may sue for damages therefor in any court of competent jurisdiction and shall recover twice the amount of such pecuniary loss, together with costs, including reasonable attorney fees."

Section 100.20(5), Stats. (1979–80), authorizes:

"**Methods of competition and trade practices.** . . . (5) Any person suffering pecuniary loss because of a violation by any other person of any order issued under this section may sue for damages therefor in any court of competent jurisdiction and shall recover twice the amount of such pecuniary loss, together with costs, including a reasonable attorney's fee."

The language of the statutes neither expressly authorizes nor denies the state the right to join First Savings as a party defendant. However, what is clear from the statutes is that the legislature intended to provide remedies for those persons who had been damaged as the result of fraudulent and deceptive trade practices. It is also clear that the legislature intended, when the state brought an action to enjoin the prohibited practices, that the trial court should not limit itself only to giving injunctive relief but should also determine what losses have been suffered by individuals and attempt to fashion relief for those injured persons. Consistent with such a purpose would be a construction of the language in secs. 100.18(11)(d) and 100.20(6) as allowing the state to name as a defendant in a complaint the same party who individuals, if they had brought an action, could name. We conclude that the purpose underlying these statutes requires a construction of the statutes which allows First Savings to be joined as a party defendant in this action.

The court of appeals concluded that this construction of the statutes' language would lead to the "unreasonable result" of allowing recovery to be had against an assignee when such recovery would otherwise not be possible. In support of this position, the court of appeals referred to sec 403.305, Stats. 1979–80, a section dealing with the rights of a holder in due course, and then noted that, "to allow the state to bring an action against an assignee would render sec. 403.305, Stats., meaningless." (Slip opinion at iii., fn. 7). However, the contracts here involved are not negotiable instruments[11] and thus First Savings could not be a holder in due course.[12] Further, as an assignee of the contracts, First Savings

---

[11] See sec. 403.104, Stats. 1979–80.

[12] See sec. 403.302, Stats. 1979–80.

took the contracts subject to all claims and defenses of the pool buyers.

First Savings was aware of this. Each contract contained the following notice (as was required by federal law) :[13] "Any holder of this consumer credit contract is subject to all claims and defenses which the debtor could assert against the seller of goods or services obtained pursuant hereto or with the proceeds hereof." Thus, under the terms of the contracts, the pool purchasers could have maintained actions against First Savings. Consequently, allowing the state to assert these claims would not lead to the "unreasonable result" the court of appeals feared.

The court of appeals' assertion that allowing recovery against an assignee would nullify sec. 403.305 is without foundation. The rules which protect a holder in due course cannot be invoked to protect an assignee of a contract wherein that assignee is clearly made subject to any claims or defenses the buyer may assert. That is the case here. Under the statutes, recovery may presently be had against First Savings.

First Savings also argues that even though a complete remedy cannot be fashioned without its presence as a defendant in this case, it still cannot be made a party defendant because the complaint states no "claim" against it. Under sec. 802.02(1), Stats. (1979–80), a complaint must contain "a short and plain statement of the claim, identifying the . . . series of transactions . . . out of which the claim arises and showing that the pleader is entitled to relief. . . ."

The complaint here meets these requirements. Citing *Dery v. Wyer*, 265 F.2d 804, 807 (2nd Cir. 1959) for its definition, the court of appeals correctly pointed out that

---

[13] 16 CFR sec. 433.2 (1982). A similar requirement for home improvement contracts is found in Chap. AG, sec. 110.06(3), Wis. Adm. Code.

a "claim" need only set out the "aggregate of operative facts giving rise to a right enforceable in courts." (Slip opinion at i. fn. 1.) Here the complaint clearly sets out the facts necessary to show violations of the statutes involved in this action. Further, the complaint's allegations show that without the inclusion of the assignee, First Savings, as a party, complete relief cannot be had. The statute does not require more.

Although the state's initial purpose in commencing an action under these statutes is to obtain injunctive relief, it is clear from the language of the statutes that the legislature did not intend to limit the circuit court only to granting injunctive relief. Rather, the trial court is given a broad authorization to make the injured parties whole. As the United States Supreme Court stated in *Porter v. Warner Co.*, 328 U.S. 395, 398 (1946), once the equitable jurisdiction of a court is invoked,

"the comprehensiveness of this equitable jurisdiction is not to be denied or limited in the absence of a clear and valid legislative command. Unless a statute in so many words, or by a necessary and inescapable inference, restricts the court's jurisdiction in equity, the full scope of that jurisdiction is to be recognized and applied."

Because the statutes here involved contain no limitation on the trial court's exercise of its equity jurisdiction, we conclude that the trial court has the full scope of equitable remedies available to it to fashion relief for the parties injured as the result of the acts and practices involved in this action. The question thus becomes whether a court of equity may join as a party defendant a party without whom full relief cannot be granted. We conclude the court may do so.

This court has not previously considered the question of whether a court of equity may, in attempting to fashion a remedy for the fraudulent conduct of one party,

join another party not directly involved in the fraud but one which is necessary to provide complete relief. Retired Michigan Supreme Court Justice Eugene F. Black, in presenting his views on equity jurisprudence, recently concluded that "[i]f anything justifies equity's existence it is that supreme ability to prevent or remedy fraud in all its nefarious characteristics, no matter how contrived and sought to be effected. Fraud, so to speak, is equity's exclusive dish."[14]

Once a court of equity obtains jurisdiction over a matter, it will exercise its jurisdictions in an effort to do complete justice between the parties to the action. *Fullerton Lumber Co. v. Torborg,* 274 Wis. 478, 485, 80 N.W.2d 461 (1957) ; *Tri-State Home Improvement Co. v. Mansavage,* 77 Wis. 2d 648, 660, 253 N.W.2d 474 (1977). As Justice Black wrote in *Love v. Wilson,* 346 Mich. 327, 78 N.W.2d 245, 247 (1956), in order to provide complete relief to a party injured by the fraudulent conduct of another, "[i]t is wholly unnecessary that a [complaint] addressed to [the equity] side of the court must state as at law a cause of action against a defendant in order to name and make him a defendant."

The *Love* case involved a bank-bailee which held in its possession, as collateral, securities of a defendant (Wilson) who had allegedly engaged in fraudulent activities. The Michigan Court determined that the bank could be joined as a party defendant even though no cause of action was stated against it. This was done in order to allow the trial court to provide complete relief to the parties.

Although First Savings seeks to have us distinguish *Love* from the present case because First Savings is not

[14] Black, *A Brief for Resurrection of Equity Jurisprudence,* 60 Mich. B.J. 381, 388 (1981).

a bailee, this argument misses the point. The bank in *Love* was joined as a party defendant because it was necessary to include it as a party if complete justice was to be done. That principle holds here as well. Unless First Savings is included in this action, complete justice cannot be done.

We conclude that First Savings may properly be joined as a party defendant in this action. Such a conclusion is consistent with both the purpose underlying the statutes involved herein and the trial court's exercise of its equity jurisdiction.

*By the Court.*—Decision of the court of appeals reversed and cause remanded to the trial court for further proceedings not inconsistent with this opinion.

STEINMETZ, J. *(dissenting).* The majority has misinterpreted and misapplied the law in a result-oriented effort which will cause chaos and doubt in the area of consumer protection law for years to come. The purpose is to find a deep pocket to enable recovery by consumers, who in this case are purchasers of swimming pools.

The majority writes of courts of equity, but fails to distinguish between the dictionary definition of equity as doing fairness or justice and that body of jurisprudence differing in its origin, theory and methods from the common law. There are no courts of equity in Wisconsin, only circuit courts which have jurisdiction to award legal or equitable remedies. Sec. 801.01, Stats. To refer to this trial court as a court of equity is a misnomer. It is a circuit court with the power to supply an equitable as well as legal remedy.

The majority's reliance on *Love v. Wilson*, 346 Mich. 327, 78 N.W.2d 245 (1956) is misplaced. *Love* held that a cause of action against a defendant was not necessary in order to name it as a party as long as "his presence in the case as a defendant is shown as requisite and neces-

sary to equity's ultimate purpose—that of providing full
and complete relief with due adjustment in one suit of
the rights and duties of all of the named parties growing
out of or connected with the subject matter of the suit."
*Id.* at 330–31. The decision did not state that a remedy
may be granted for or against that party, even though
no cause of action was stated.

In *Love,* the named bank had in its possession, as col-
lateral, certain securities of Ralph Wilson, a partner in
a co-partnership, D.M. Love Associates, which was seek-
ing dissolution. The complaint naming the bank, as-
cording to the Michigan court, alleged:

> "[I]n due form that equitable control of such securi-
> ties and Wilson collateral is necessary in order that com-
> plete relief in the case be duly decreed. As to such
> Wilson collateral the bill prays discovery and it asks
> preservation by injunction of all such partnership and
> individually-owned assets until decree is entered. That is
> enough to hold the bank, in court as a party, until equity
> is permitted to accomplish the purposes of her invoked
> jurisdiction—preservation first, discovery next, and dis-
> position according to maxim last. Any other rule would
> clear the way for *pendente* release of a stakeholder with
> possible resultant loss of the whole or part of the in-
> volved subject matter." Id. at 329–30.

These facts are a far cry from being analogous to the
instant case. The Michigan court applied and quoted
that court's rule as follows: " '[A]ny person may be
made a defendant who has or claims an interest adverse
to the plaintiff. *Any person may at any time be made a
party if his presence is necessary or proper to a complete
determination of the cause.'* " *Id.* at 331. Michigan
Court Rule No. 1, sec. 3 (1945). Michigan requires an
existing adverse interest for a party to be named or
that his presence is necessary for a complete determina-
tion of the cause. First Savings is not adverse to an in-
junction against Viking, nor is it a necessary party to

a determination of the cause of whether an injunction should issue against Viking. The state may seek no other remedy against First Savings in this action, since it is limited to only an injunction against a violator which may be accompanied with other requested relief.

Secs. 100.18 (11) (d), Stats. 1979, and 100.20 (6), cited by the majority, only authorize the state to commence an action to enjoin a violation of the respective statutes. Both statutes state that the department of justice "may commence an action in circuit court in the name of the state to restrain by temporary or permanent injunction [violations]." That is the extent of the attorney general's authorization. The attorney general sought no injunctive relief against First Savings. By the majority's own admission, "The complaint alleged that certain of the defendants, *but not First Savings,* had engaged in deceptive practices in the sale of swimming pools." (Emphasis added.) (*Supra* at 483.) Therefore, the statutes by their own terms give the attorney general no right to name First Savings as a party.

The majority then reasons that a party, even though no cause exists against it, may be named by the trial court for the purpose of forging a remedy. The authority for the trial court to form any proper remedy is part of secs. 110.18 (11) (d), Stats. 1979, and 100.20 (6). However, that authority of the trial court refers only to parties against whom relief is sought in the action. A party may not be named for possible relief unless the plaintiff possesses a cause of action against that party. The state had no cause of action against First Savings and has made it a party only to create a remedy. In my opinion, such reasoning is inverted.

The intent of the legislature in the sections considered is clear, and it is not that sculptured out of desire by the majority. Individual consumers can obtain relief against First Savings pursuant to secs. 100.18 (11) (b) 2 and

100.20 (5), Stats. 1979, and ch. AG, sec. 110.06 (1), Wis. Adm. Code. These sections make no mention of the state as a proper party. The state may only seek to prevent future or further deceptive practices.

When the majority writes: "Consistent with such a purpose would be a construction of the language in secs. 100.18 (11) (d) and 100.20 (6) as allowing the state to name as a defendant in a complaint the same party who individuals, if they had brought an action, could name," it is engaging in wishful and artful thinking and not describing the legislature's intent. (*Supra* at 488.)

The distinction between who is maintaining the action can be significant for purposes of discovery. When the consumer is the plaintiff, it is treated as a party. When the state is the plaintiff, the consumer is not a party, but only a witness for the state, and is therefore not subject to all discovery techniques.

I foresee a myriad of potential problems with the majority's decision. If funds are obtained, is the state to become the trustee and administrator of those funds on behalf of all known or unknown alleged victims of defendants' unfair practices? By the majority's own statement, Viking sold 106 swimming pools but does not say all those sales were claimed to be deceptive. Of that total, 44 pool purchases were financed by First Savings. Are all buyers being protected by the state or only those known or only those alleging deceptive practices now or in the future? Will the state represent buyers who paid cash or financed through lending institutions other than First Savings? The majority opinion creates a tangled web.

This court in *Estate of Sharp,* 63 Wis. 2d 254, 260–61, 217 N.W.2d 258 (1974), clearly spelled out the authority and the limitations on that authority of the attorney general to prosecute an action. That opinion stated:

"This constitutional principle has been interpreted by the courts in numerous decisions as removing from the office of the attorney general any powers and duties which were found in that office under common law. *State ex rel. Beck v. Duffy* (1968), 38 Wis. 2d 159, 163, 156 N.W.2d 368; *State ex rel. Jackson v. Coffey* (1963), 18 Wis. 2d 529, 118 N.W.2d 939; *State v. Snyder* (1920), 172 Wis. 415, 179 N.W. 579. *The attorney general is devoid of the inherent power to initiate and prosecute litigation intended to protect or promote the interests of the state or its citizens and cannot act for the state as parens patriae. See generally:* Christenson, *The State Attorney General,* 1970 Wis. L. Rev. 298. Such power must be specifically granted by the legislature. Unless the power to prosecute a specific action is granted by law, the office of the attorney general is powerless to act." (Emphasis added.) (Footnote omitted.)

*Sharp* declared that the state is not to act as *parens patriae.* Nonetheless, in this case, the state takes on not only that role, but also the role of big brother. The all-protective, controlling and dominating government has come a year early George,[1] in 1983 and not 1984, being accomplished by court fiat.

I dissent and would affirm the court of appeals but for the reasons stated.

I am authorized to state that JUSTICE WILLIAM G. CALLOW joins this dissent.

---

[1] Reference George Orwell's novel, 1984.