Michael JACKSON, Plaintiff-Appellant,

v.

James DEWITT, d/b/a Pure Water Unlimited, and
Kathleen M. DeWitt, Defendants,

ASSOCIATES FINANCIAL SERVICES COMPANY OF WISCONSIN,
INC., Defendant-Respondent.

Court of Appeals

*No. 98–0493. Submitted on briefs October 21, 1998.—Decided
February 24, 1999.*

(Also reported in 592 N.W.2d 262.)

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Scott V. Lowry* of Waukesha.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Kathryn M. West* and *Elizabeth M. Estes* of *Whyte Hirschboeck Dudek S.C.* of Milwaukee.

Before Snyder, P.J., Brown and Anderson, JJ.

ANDERSON, J. Michael Jackson appeals from the order of the circuit court dismissing his action against Associates Financial Services Company of Wisconsin, Inc. (Associates). The court held that the home improvement contract he made with James DeWitt, who assigned his interest to Associates, was not a negotiable instrument and Jackson could not seek relief under WIS. ADM. CODE § ATCP 110.06. The court also held that because Jackson had paid the entire balance of the loan before Associates became aware of his claims, he was foreclosed from seeking relief under § 422.408, STATS. We reverse because § ATCP 110.06 provides that any assignee of a home improvement contract takes subject to the claims and defenses of the consumer without regard to negotiability. In addition, § 422.408 is not a safe harbor for the assignee or holder of an "interlocking consumer loan" when that loan is also a "home improvement contract."

Jackson entered into a contract for the construction of an in-ground lap pool with DeWitt. The contract provided for a 12' x 60' pool at an estimated cost of

$21,000. At the time the contract was signed, Jackson paid DeWitt $11,400 in cash and financed $7500 through a Retail Installment Security Agreement (RISA). Associates provided DeWitt with all the forms necessary to document the financing of home improvements. Consumer requests for financing were subject to Associates' approval, which was given for Jackson's lap pool. When the RISA was completed DeWitt assigned it to Associates. Jackson made two monthly payments of $202.90 and a final payment of $7094.20 while the lap pool was still under construction. When the pool was filled it failed to hold water and Jackson had the pool and deck removed.

Approximately ten months after making the final payment under the RISA, Jackson started this action against DeWitt and Associates. Jackson pled two causes of action solely against DeWitt—first, a breach of contract and second, a violation of WIS. ADM. CODE ch. ATCP 110. He also pled two causes of action against Associates and DeWitt jointly. First, he sought a declaratory judgment that the RISA was void as contrary to law and public policy. Second, he alleged that Associates violated ch. ATCP 110 and he asserted "against Associates Financial Services Company of Wisconsin, Inc. all of the valid claims and defenses it [the plaintiff] has against James DeWitt . . . ." For relief against Associates, Jackson sought return of the $7500 he had financed.

Associates and Jackson filed competing motions for summary judgment. Associates sought summary judgment on the grounds that because the loan was paid in full before Jackson had knowledge that the pool was defective, it had no liability under the Wisconsin Consumer Act (WCA). Associates also sought dismissal of the claim, contending that it violated WIS. ADM. CODE

§ ATCP 110.06 because the RISA was not a negotiable instrument. Jackson's competing motion for summary judgment contended that he was not limited to the remedies provided in the WCA; rather, he could select his remedies and had chosen the remedies provided by § ATCP 110.06.

The circuit court granted summary judgment to Associates. The circuit court held that the RISA was an "interlocking consumer loan" under § 422.408, STATS.; that Associates' liability was limited to the balance due at the time Associates had notice of claim against DeWitt; and, because Jackson had paid the amount due in full before learning of any claim against DeWitt, Associates was not liable to Jackson. The circuit court denied Jackson's competing motion for summary judgment. The court reasoned that the RISA was not a negotiable instrument; therefore, Jackson could not state a cause of action under WIS. ADM. CODE § ATCP 110.06.

This court's review of the circuit court's grant of summary judgment is de novo, applying the same summary judgment methodology of § 802.08, STATS. *See Millers Nat'l Ins. Co. v. City of Milwaukee*, 184 Wis. 2d 155, 164, 516 N.W.2d 376, 378 (1994). Additionally, both parties moved for summary judgment which is equivalent to a stipulation of facts, thus permitting the circuit court to decide the case only on legal issues. *See Flynn v. Department of Admin.*, 216 Wis. 2d 521, 533, 576 N.W.2d 245, 250 (1998).

On appeal, Jackson makes alternative arguments. First, he argues for an in pari materia treatment of WIS. ADM. CODE § ATCP 110.06 and § 422.408, STATS. Jackson contends that these two provisions have an underlying theme—the protection of the consumer. Because of this theme, Jackson believes these provi-

sions must be construed to accomplish the common purpose. He reads § 422.408 as limiting a consumer's remedies to the unpaid balance of the "interlocking consumer loan" to cases where the consumer seeks relief under the statute. He reads § ATCP 110.06 as encompassing all home improvement contracts, including "interlocking consumer loans" and providing a consumer with a greater variety of remedies. Finally, he maintains that the consumer who has a home improvement contract that is also an "interlocking consumer loan" has the choice of proceeding under the statute or the administrative code.

In the alternative, Jackson disputes the circuit court's conclusion that the RISA was not a negotiable instrument. His first proposition is that the fact that DeWitt assigned the RISA to Associates is proof that it is a negotiable instrument. His second proposition is that although the Uniform Commercial Code (U.C.C.) does not apply to consumer transactions, it may be looked to for guidance, and the RISA carries all the indicia of a negotiable instrument.

This appeal requires an interpretation of the interplay of the WCA and an administrative rule promulgated by the Department of Agriculture, Trade and Consumer Protection. Section 422.408, STATS., regulates "interlocking consumer loans" and provides in pertinent parts:

> (1) The lender in an interlocking consumer loan is subject to the claims and defenses the consumer may have against the seller or lessor in the consumer transaction for which the proceeds of the loan are used, subject to sub. (3).
>
> . . . .
>
> (3) For purposes of this section, a consumer loan transaction is an "interlocking consumer loan"

if the creditor knows or has reason to know that all or a meaningful part of the proceeds of the loan are used to pay all or part of the customer's obligations to the seller or lessor under a consumer sale or lease, and if:

. . . .

(b) The lender supplies to the seller or lessor, or the seller or lessor prepares, documents used to evidence the loan, other than sales slips or drafts used to evidence purchases pursuant to an open-end credit plan;

. . . .

(4) To the extent that a lender under an interlocking consumer loan is subject to claims or defenses of the customer against a merchant under this section, the lender's liability is limited to claims or defenses arising from the consumer transaction financed by the proceeds of the loan, and may not exceed that portion of the unpaid balance of the loan at the time the lender has notice of the claim or defense, which the proceeds used to pay all or part of the customer's obligation on which the claim is based bears to the entire amount financed of the loan, unless the customer has obtained a judgment against the merchant and execution thereon has been returned unsatisfied, in which event the lender shall in addition be liable in a similar manner for the proportionate amount paid by the customer to the lender with respect to the interlocking consumer loan before the lender received notice of the claim or defense of the customer.

WISCONSIN ADM. CODE § ATCP 110.06, governs home improvement contracts and provides:

(1) Every assignee of a home improvement contract takes subject to all claims and defenses of the buyer or successors in interest.

883

(2) No seller shall enter into any home improvement contract wherein the buyer waives the right to assert against the seller or any assignee any claim or defense the buyer may have against the seller under the contract.

(3) No seller shall use any promissory note or instrument, other than a check, in connection to a home improvement contract unless it bears the following statement in contrasting bold-face type: "This is a home improvement instrument and is non-negotiable. Every holder takes subject to claims and defenses of the maker or obligor."

(4) Every holder or transferee of a negotiable instrument executed in violation of this section, who knew or should have known at the time the document was acquired that it was made to evidence an obligation for home improvements, or who knew or should have known that the payee or transferor was engaged in the home improvement business, takes subject to all claims and defenses of the maker or obligor.

(5) Claims and defenses of any buyer against an assignee or transferee under the contract shall be limited to the total amount for which the buyer was obligated at the time of entering into the contract.

In holding that the RISA was not a negotiable instrument, the circuit court adopted the brief filed by Associates. Associates contends the RISA does not fall under the purview of WIS. ADM. CODE § ATCP 110.06 because the application of § ATCP 110.06(4) is limited to a "holder or transferee of a negotiable instrument." Associates argues that the RISA does not meet the test for a negotiable instrument established in § 403.104(1), STATS.[1] It also insists that a "note or instrument" as

---

[1] Section 403.104(1), STATS., provides:

used in § ATCP 110.06(3) is a further reference to a negotiable instrument.[2] Associates concludes the RISA is not negotiable because it does not satisfy the statutory requirements of § 403.104, and the provisions of § ATCP 110.06(3) and (4) apply only to negotiable instruments. Therefore, Associates is not an assignee of a negotiable instrument and Jackson cannot assert any claims and defenses he has against DeWitt, against Associates.

██

We agree with Associates that the RISA is not a negotiable instrument. It is elementary commercial law that "[a] writing to be a negotiable instrument must be signed by the maker, contain an unconditional promise to pay a sum certain and no other promise except as authorized by this law, be payable on demand or at a definite time, and be payable to order or to bearer." *Federal Deposit Ins. Corp. v. First Mortgage Investors*, 76 Wis. 2d 151, 159, 250 N.W.2d 362, 366

---

**(1)** Except as provided in subs. (3) and (4), "negotiable instrument" means an unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order, if all of the following apply:

(a) It is payable to bearer or to order at the time that it is issued or first comes into possession of a holder.

(b) It is payable on demand or at a definite time.

(c) It does not state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money, but the promise or order may contain any of the following:

1. An undertaking or power to give, maintain or protect collateral to secure payment.

2. An authorization or power to the holder to confess judgment or realize on or dispose of collateral.

3. A waiver of the benefit of any law intended for the advantage or protection of an obligor.

[2] Section 403.104(2), STATS., provides that an " '[i]nstrument' means a negotiable instrument."

(1977). The RISA is not a negotiable instrument because it contains promises, other than an unconditional promise to pay. For example, Jackson promises to purchase a swimming pool, to grant a security interest in the pool, and to pay any delinquency charges.

The conclusion that the RISA is not a negotiable instrument finds support in *State v. Excel Management Services, Inc.*, 111 Wis. 2d 479, 488, 331 N.W.2d 312, 317 (1983), a case in which the attorney general brought a consumer protection action against a company that sold swimming pools.[3] In holding that a savings and loan that had an arrangement to provide financing for customers who wanted to purchase pools was a proper party defendant, *see id.* at 488, 331 N.W.2d at 316, the supreme court explored the relationship between the savings and loan and the swimming pool company. In *Excel Management*, the swimming pool company would arrange financing through the savings and loan, which either specified or provided the contractual documents. *See id.* at 484–85, 331 N.W.2d at 315.[4] After a customer entered into a contract to purchase a swimming pool, the swimming pool company assigned its contract rights to the savings and loan. *See id.* at 485, 331 N.W.2d at 315.

The supreme court rejected the argument that the savings and loan, as a holder in due course, had the benefit of the protections afforded by the U.C.C. *See id.* at 488–89, 331 N.W.2d at 317. The supreme court held

---

[3] The attorney general accused Excel Management Services and others of engaging in deceptive practices in the sale of swimming pools in violation of § 100.18(1) and 100.18(9)(a), STATS., 1978–80. *See State v. Excel Management Servs., Inc.*, 111 Wis. 2d 479, 480–81, 331 N.W.2d 312, 313 (1983).

[4] This arrangement is a classic "interlocking consumer loan" as defined in § 422.408(3)(b), STATS.

that the contracts involved were not negotiable instruments. *See id.* at 488, 331 N.W.2d at 317. We see no difference between the financing contracts and the arrangements between the swimming pool company and the savings and loan in *Excel Management* and the RISA and arrangements between DeWitt and Associates in this case. We are satisfied that the RISA is not a negotiable instrument.

However, our holding that the RISA is not a negotiable instrument does not dictate the result advocated by Associates and reached by the circuit court. Rather, there are compelling reasons to reverse the circuit court. First, a commonsense reading of WIS. ADM. CODE § ATCP 110.06 substantiates that the regulation covers home improvement contracts and is not limited to negotiable instruments. Second, public policy dictates that consumer protection statutes and administrative rules must be read in pari materia to achieve the goal of providing protection and remedies to consumers. Third, *Excel Management* teaches that an assignee of a nonnegotiable home improvement contract takes the contract "subject to all claims and defenses of the buyer or his successor in interest." *Excel Management,* 11 Wis. 2d at 487, 331 N.W.2d at 316 (quoted source omitted).

We first turn to the administrative regulation. The interpretation of a regulation is a question of law that we review de novo. *See Brown v. Brown,* 177 Wis. 2d 512, 516, 503 N.W.2d 280, 281 (Ct. App. 1993). We are to give effect to the intent of the regulation. *See id.* In determining the intent, we look first to the plain meaning of the regulation. *See id.* If it clearly and unambiguously sets forth the intent, it is our duty to merely apply that intent to the facts and circumstances of the question presented. *See id.*

WISCONSIN ADM. CODE ch. ATCP 110 was promulgated by the Department of Agriculture, Trade and Consumer Protection under rule-making authority granted by § 100.20(2), STATS.[5] *See* ch. ATCP 110 note. The regulation is often called Wisconsin's Home Improvement Trade Practices Code and represents "perhaps the most significant, general order that has been promulgated" by the Department. James D. Jeffries, *Protection for Consumers Against Unfair and Deceptive Business*, 57 MARQ. L. REV. 559, 578 (1974). The legislature has also given consumers, harmed by violations of the code, the right to seek restitutionary relief:

> Any person suffering pecuniary loss because of a violation by any other person of any order issued under this section may sue for damages therefor in any court of competent jurisdiction and shall recover twice the amount of such pecuniary loss, together with costs, including a reasonable attorney's fee.

Section 100.20(5). *See Excel Management*, 111 Wis. 2d at 488, 331 N.W.2d at 316.[6]

---

[5] Section 100.20(2)(a), STATS., provides:

The department, after public hearing, may issue general orders forbidding methods of competition in business or trade practices in business which are determined by the department to be unfair. The department, after public hearing, may issue general orders prescribing methods of competition in business or trade practices in business which are determined by the department to be fair.

[6] In *Perma-Stone Corp. v. Merkel*, 255 Wis. 565, 39 N.W.2d 730 (1949), our supreme court held that a violation of an administrative code section relating to home improvement work on a consumer's residence rendered the agreement between the consumer and contractor void. *See id.* at 570–71, 39 N.W.2d at 733. *Perma-Stone* held that a contract entered into in violation of an

Under the code, Associates is an assignee of a "home improvement" contract. Jackson contracted for the installation of a swimming pool which the regulation defines as a "home improvement." *See* WIS. ADM. CODE § ATCP 110.01(2).[7] Jackson and DeWitt entered into a written agreement under which DeWitt was to provide all labor and material for the installation of the swimming pool. This agreement is within the definition of a "home improvement" contract. *See* § ATCP 110.01(4).[8] The definition of a "home improvement" contract does not contain any mention of negotiability; therefore, it encompasses negotiable and nonnegotiable instruments. DeWitt assigned his interest in the "home improvement" contract to Associates.

WISCONSIN ADM. CODE § ATCP 110.06(1) provides that "[e] *very assignee of a home improvement contract* takes subject to all claims and defenses of the buyer or successors in interest." (Emphasis added.) This requirement is not limited to negotiable instruments but includes every form of "home improvement" contract previously defined in WIS. ADM. CODE § ATCP

---

administrative regulation, which was issued pursuant to § 100.20, STATS., renders the contract void because it violates the statute prohibiting deceptive trade practices. Contracts entered into in violation of a statute are void and unenforceable as a matter of law. *See Perma-Stone*, 255 Wis. at 570–71, 39 N.W.2d at 733.

[7] WISCONSIN ADM. CODE § ATCP 110.01(2) provides, in pertinent part, " 'Home improvement' means . . . the construction, installation . . . of . . . swimming pools . . . ."

[8] WISCONSIN ADM. CODE § ATCP 110.01(4) provides in part: " 'Home improvement contract' means an oral or written agreement between a seller and an owner . . . of residential . . . property . . . and includes all agreements under which the seller is to perform labor or render services for home improvements, or furnish materials in connection therewith."

110.01(4). The circuit court's and Associates' focus on the term "negotiable instrument" ignores this broad rule.

The reference to "negotiable instrument" in WIS. ADM. CODE § ATCP 110.06(4) blocks defenses that a holder in due course has under the Uniform Commercial Code. It does not deter consumers' claims. Under the U.C.C., "[a] holder in due course is a holder who takes an instrument for value, in good faith, and without notice that the instrument is overdue or has been dishonored or of any defense against or claim to it on the part of any person." *Vesely v. Security First Nat'l Bank,* 128 Wis. 2d 246, 252, 381 N.W.2d 593, 596 (Ct. App. 1985) (emphasis omitted). The U.C.C. provides that a holder in due course takes the negotiable instrument free from any claims and defenses of persons with whom the holder has not dealt. *See generally Wisconsin Bankers Ass'n v. Mutual Sav. & Loan Ass'n,* 87 Wis. 2d 470, 501, 275 N.W.2d 130, 142 (Ct. App. 1978), *rev'd on other grounds,* 96 Wis. 2d 438, 291 N.W.2d 869 (1980).

If an assignee of a negotiable instrument, that also is a "home improvement" contract, could assert that it was a holder in due course, it would be able to avoid the directive of WIS. ADM. CODE § ATCP 110.06(1) that assignees of "home improvement" contracts take subject to all claims and defenses of the consumer. Therefore, § ATCP 110.06(4) has a very limited purpose which is to prevent a holder in due course of a negotiable instrument that is also a "home improvement contract" from making such an assertion. In fact, WIS. ADM. CODE ch. ATCP 110 "prohibits the taking of negotiable instruments in home improvement sales and provides that every assignee of a home improvement contract takes subject to all claims and defenses of the buyer." Jeffries, 57 MARQ. L. REV. at 578–79. For

that reason, the regulation cannot be read to limit its applicability to "negotiable instruments." Such a narrow reading would permit an assignee of a nonnegotiable "home improvement" contract, such as Associates, to avoid any claims and defenses of the consumer, contrary to the purpose of the regulation.

To subject all assignees or holders of "home improvement" contracts, including Associates, to the claims and defenses of the consumer, fulfills the intent of WIS. ADM. CODE ch. ATCP 110. As one commentator has noted, ch. ATCP 110 "deals with a virtual laundry list of unfair or deceptive home improvement practices that have resulted in substantial financial losses to home owners over the years." Jeffries, 57 MARQ. L. REV. at 578. The Wisconsin Supreme Court has also noted, "[T]he home improvement trade is subject to comprehensive and stringent rules designed to protect the consumer." *State v. Clausen*, 105 Wis. 2d 231, 239, 313 N.W.2d 819, 823 (1982). To protect the homeowner when the contractor or seller has failed to fulfill the obligations imposed by ch. ATCP 110, the homeowner must be able to seek restitutionary relief wherever it is available. Section ATCP 110.06 and § 100.20(5), STATS., provide relief from the assignee or holder on a "home improvement contract" by making the assignee or holder subject to the claims and defenses of the buyer.

After holding that the RISA was not a negotiable instrument and not subject to the administrative rules, the circuit court went on to hold that Jackson was not entitled to any relief under the WCA. The circuit court reasoned that Jackson had an "interlocking consumer loan," *see* § 422.408(3), STATS., and his relief was limited to "the unpaid balance of the loan at the time the lender has notice of the claim or defense." Section

422.408(4). Because he had paid off the loan the court concluded that he did not have a cause of action against Associates. The effect of the circuit court's rulings—that WIS. ADM. CODE § ATCP 110.06 did not apply because the RISA was not a "negotiable instrument" and § 422.408 did not apply because Jackson paid the entire loan—is to block Jackson from any restitutionary relief from Associates. This result is not tolerated by either provision.

■

The WCA and the Home Improvement Trade Practices Code deal with consumer protection.[9] When there is a statute and a regulation dealing with the same subject matter they are to be read in pari materia. *See Town of Vernon v. Waukesha County*, 99 Wis. 2d 472, 480–81, 299 N.W.2d 593, 598 (Ct. App. 1980), *aff'd*, 102 Wis. 2d 686, 307 N.W.2d 227 (1981). The statute and the regulation must be read in harmony to give effect to their leading idea. *See Clausen*, 105 Wis. 2d at 244, 313 N.W.2d at 825. Our effort to harmonize the statute and regulation is made easier because provisions of the W CA were specifically written to "dovetail" with § 100.20, STATS., and regulations written under its authority. *See* Jeffries, 57 MARQ. L. REV. at 570.

Section 422.408, STATS., was written to prevent sellers from circumventing the WCA's prohibition against taking negotiable instruments in consumer credit sales. Edward J. Heiser, Jr., *Wisconsin Con-*

---

[9] "Among the primary purposes of the Wisconsin Consumer Act is the protection of consumers against unfair and deceptive practices." James D. Jeffries, *Protection for Consumers Against Unfair and Deceptive Business*, 57 MARQ. L. REV. 559, 570 (1974). The Home Improvement Trade Practices Code "deals with a virtual laundry list of unfair or deceptive home improvement practices . . . ." *Id.* at 578.

*sumer Act–A Critical Analysis*, 57 MARQ. L. REV. 389, 436–38 (1974). As we have already demonstrated, WIS. ADM. CODE § ATCP 110.06 prohibits the taking of negotiable instruments in home improvement sales. *See* Jeffries, 57 MARQ. L. REV. at 578. In harmonizing these two provisions, we will preserve the goal of prohibiting the taking of instruments without also taking on the requisite exposure to liability in consumer credit sales.

The WCA is a general statute that "reaches virtually every kind of consumer credit financing arrangement while providing substantially increased protection for consumers." Jeffries, 57 MARQ. L. REV. at 570. The Home Improvement Trade Practices Code is a specific regulation that deals with unfair or deceptive home improvement practices causing substantial financial losses to consumers. *See id.* at 578. Where there is a general statute and a specific statute relating to the same subject matter, the specific statute will take precedence. *See City of Milwaukee v. Kilgore,* 193 Wis. 2d 168, 185, 532 N.W.2d 690, 696 (1995).

Section 422.408(4), STATS., limits a lender's liability to the unpaid balance of the "interlocking consumer loan" at the time the lender has notice of the consumer's claim or defense. Other provisions of the WCA limit a consumer's right to sue the assignee of the contract. *See* Heiser, 57 MARQ. L. REV. at 439. A consumer can only raise any claims or defenses against the original seller in a collection action by assignee.[10] *See id.*

However, WIS. ADM. CODE ch. ATCP 110 does not place such constraints on the consumer for home improvement contracts. There is no provision limiting the right to raise against the assignee the claims and

---

[10] *See* § 422.407(5) STATS.

defenses the consumer has against the seller. Similarly, WIS. ADM. CODE § ATCP 110.06(5) expands the liability of the assignee or holder of the "home improvement contract":

> Claims and defenses of any buyer against an assignee or transferee under the contract shall be limited to the *total amount for which the buyer was obligated at the time of entering into the contract.* [Emphasis added.]

██

We conclude, from the statute and regulation, that a homeowner may proceed under § 100.20(5), STATS., when he or she has suffered pecuniary loss as a result of violations of WIS. ADM. CODE ch. ATCP 110. If the "home improvement contract" was financed with an "interlocking consumer loan," full payment before discovering the violations of the regulation does not eliminate the consumer's cause of action against the assignee or holder of the "home improvement contract."

*Excel Management*, like this case, involved contracts for the sale of swimming pools to consumers. *See Excel Management*, 111 Wis. 2d at 483, 331 N.W.2d at 314. In *Excel Management*, like this case, the complaint alleged that the contracts were obtained in violation of WIS. ADM. CODE ch. ATCP 110. *See Excel Management*, 111 Wis. 2d at 481, 331 N.W.2d at 313. In *Excel Management*, like this case, the retailer used loan papers provided by the lender and assigned the completed contract to the lender. *See id.* at 484–85, 331 N.W.2d at 315. In *Excel Management*, like this case, the assigned contract contained a notice required by 16 C.F.R § 433.2, "Any holder of this consumer credit contract is subject to all claims and defenses which the debtor could assert against the seller of goods or ser-

vices obtained pursuant hereto or with the proceeds hereof."[11] *See Excel Management*, 111 Wis. 2d at 489, 331 N.W.2d at 317.

Considering these facts, the supreme court in *Excel Management* readily concluded that although the contract was not a negotiable instrument, "[a]s an assignee of the contracts from Viking, First Savings takes each contract 'subject to all claims and defenses of the buyer or his successor in interest.' " *Excel Management*, 111 Wis. 2d at 487, 331 N.W.2d at 316 (quoting WIS. ADM. CODE § ATCP 110.06(1)). The supreme court commented that the warning language required by 16 C.F.R. § 433.2 clearly made the assignee of the contract aware that it took assignment of the contract subject to "any claims or defenses the buyer may assert." *Excel Management*, 111 Wis. 2d at 489, 331 N.W.2d at 317. In *Excel Management*, the supreme court concluded that the consumers could bring actions against the assignees of their contracts for pecuniary losses stemming from the retailers' violations of the unfair trade statutes. *See id.* at 487, 331 N.W.2d at 316.

■

The factual similarity between this case and *Excel Management* requires us to reach a similar conclusion. Associates is an assignee of a "home improvement contract" that is governed by WIS. ADM. CODE § ATCP 110.06. The regulation provides, "Every assignee of a home improvement contract takes subject to all claims and defenses of the buyer or successors in interest." Section ATCP 110.06(1). Therefore, as the assignee of the RISA, Associates is subject to any claims Jackson

---

[11] The RISA signed by Jackson and assigned to Associates included an additional sentence, "Recovery hereunder by the debtor shall not exceed amounts paid by the debtor hereunder."

may assert, without regard to the negotiability of the contract.

## CONCLUSION

The circuit court erred when it blocked Jackson's efforts to assert claims, arising from DeWitt's defective construction of Jackson's swimming pool, against Associates. Under the regulation, the negotiability of the instrument is immaterial and Associates took the assignment of the RISA subject to all claims and defenses of Jackson. Although the RISA was an "interlocking consumer loan," the provisions of WIS. ADM. CODE ch. ATCP 110 apply because it is a specific regulation of home improvement practices that takes precedence over the general WCA.

*By the Court.*—Order reversed.