**Robert L. HICKS, Plaintiff,**

**v.**

**Orville FREEMAN, Secretary of Agriculture of the United States of America, Defendant.**

**No. C–149–D–66.**

United States District Court
M. D. North Carolina,
Durham Division.

Aug. 22, 1967.

---

Robinson O. Everett, of Everett, Everett & Everett, Durham, N. C., and William A. Creech, of Everett & Creech, Raleigh, N. C., for plaintiff.

William A. Gershuny, Atty., Dept. of Justice, Washington, D. C., and William H. Murdock, U. S. Atty., Greensboro, N. C., for defendant.

### MEMORANDUM OPINION, FINDINGS OF FACT, AND CONCLUSIONS OF LAW

GORDON, District Judge.

This is a rather novel case in which the plaintiff, a seasonal federal tobacco inspector, asks the Court to order the Secretary of Agriculture to continue to pay the plaintiff eight months' wages for five months' work as had been the practice for a number of years prior to a change in policy in 1965. For the reasons stated below, the relief which the plaintiff requests cannot be granted.

Jurisdiction is based on 28 U.S.C. § 1361 since this action is in the nature of mandamus to compel an officer of

the United States to perform a duty allegedly owed the plaintiff. Venue is based on 28 U.S.C. § 1391.

### FINDINGS OF FACT

The facts of this case are not in substantial dispute. The essential facts are as follows:

1. Plaintiff, a ten point disabled veteran, was appointed by the United States Department of Agriculture as a tobacco grader or inspector in August, 1955.[1] The letter, dated July 7, 1955, advising plaintiff of his appointment, stated that:

"Services can be used for approximately 6 months, then furloughed [sic] without pay until services needed again."

2. At the time of plaintiff's entry on duty, the Civil Service Commission announcement of his job stated that:

"The salaries of persons who are employed in positions comparable to the GS–9 grade on a seasonal basis and who work for periods of 6 months or less during any 12-month period, may be fixed by the Secretary of Agriculture as provided in Section 14 of the Tobacco Inspection Act, approved August 23, 1935, and may, for such short seasons, be at rates higher than those specified above. * * * There are no higher rates of pay for the GS–5 or GS–7 grades. Appointments to all positions having a season longer than 6 months will be at the regular rates of pay indicated above."

Plaintiff's area supervisor had explained the terms of employment to plaintiff. Plaintiff understood that he was to be paid six months' salary for his work on the tobacco markets during his initial, probationary season. Thereafter, if plaintiff qualified to grade two types of flue-cured tobacco, he was to receive a minimum of eight months' pay for his work each market season.

3. Plaintiff received pay at a rate equivalent to a GS–5 rating for the first year while he was serving out his probationary period. In August, 1956, plaintiff was classified as a "career competitive seasonal" employee, given a wage rate of GS–7 and on his Form 52 from the Civil Service Commission it was stated that "Employment will be six months or more a year on a continuing basis."

4. On July 6, 1960, plaintiff was promoted to a GS–9 wage level. His Personnel Form 52 stated that he had

"qualified for promotion by making an appropriate score in his practical test, and has served the required length of time. His name appears on Promotion Register No. 15–R, and is certified thereon as being one of the best qualified candidates. Employment is seasonal and will be six months or more a year on a continuing basis."

5. Until the 1966 season, plaintiff was in pay status for approximately eight months each year and was on furlough the remaining four months of the year, although he actually worked on an average only five months out of the eight months for which he was paid.[2] On November 1, 1965, the Director of the Tobacco Division of the United States Department of Agriculture informed the tobacco inspectors, including the plaintiff, that beginning with the 1966 season they would be paid only for the actual time they worked on the tobacco markets except for a short period at each end of the season for preparation and travel to and from the markets. As a result of this order, during the 1966 season, plaintiff was in pay status from July 20 until December 12, 1966, and thus was given five months' pay, for

---

1. The duties of a tobacco inspector involve the grading of tobacco offered for auction on the warehouse floor. The grade the inspector gives the tobacco determines the price at which the government will purchase the tobacco if it is not sold at auction for an equivalent or higher price.

2. This had apparently been the method of compensation for tobacco Inspectors since at least 1946: all non-probationary tobacco Inspectors grading two types of flue-cured tobacco received a minimum of eight months' pay in their civil service grade per year.

the five months that he actually worked, instead of the eight months' pay he had been receiving.

The plaintiff, therefore, brought this suit asking the Court to order the Secretary of Agriculture to reinstate plaintiff in his original status and position, and to pay plaintiff hereafter on the same basis as he had been paid in years past.

## DISCUSSION

■ As the Court perceives the numerous arguments presented by the plaintiff, the plaintiff presents three basic theories upon which he posits his right to an order or writ of mandamus.[3] They are as follows:

1. The first theory is that the terms of government employment cannot be changed at the will of an Executive Department head: that once a wage policy has been established and men have been hired and compensated on that basis for a number of years, the Department is estopped from changing its wage policy with regard to these men. The plaintiff argues that since the Department of Agriculture had paid tobacco inspectors eight months' wages for five months' work on the tobacco markets each year, and the plaintiff acted in reliance on this practice to take the job with the Department to his detriment, since plaintiff cannot now change jobs due to his age (46), lack of education, and disability, that the Secretary should now be estopped from changing the method of compensating the plaintiff.

2. The second theory the plaintiff asserts is that the furlough of tobacco inspectors at the end of the tobacco marketing season is a "reduction in force" within the meaning of the Civil Service Commission regulations, and that, therefore, the Department should have followed the procedures set out in these regulations before furloughing the plaintiff. Plaintiff asserts that this would cause him to be retained longer than some inspectors, who were furloughed later than the plaintiff, because he is a ten-point disabled veteran with twelve years of experience. The plaintiff seeks to have the Department ordered to use these procedures in furloughing him in the future.

3. Thirdly, the plaintiff claims that the "Employee-Management Cooperation Agreement" entered into between the Department of Agriculture as "Management" and the Federal Tobacco Inspector's Mutual Association as the "Union" had the binding force of a labor agreement, was violated by the Department's unilateral change of wage policy, and should be enforced against the Department.

The plaintiff cannot prevail under any of the asserted theories, and the relief requested cannot be granted.

### The Estoppel Theory

Plaintiff asserts that the Secretary of Agriculture is estopped from changing the method used to compensate him by virtue of certain Civil Service Regulations, the assurances of Department personnel, the practices of the past, and the reliance by the plaintiff on these things to his detriment.

■ Certain cases are cited by plaintiff which stand for the proposition that the Secretary of an Executive Department must follow his own promulgated Regulations in discharging his employees.[4] These cases are not applicable to the case at bar for two reasons. First-

---

3. The extensive arguments concerning the authority of the Secretary of Agriculture to set wage policy as affected by the Tobacco Inspection Act of 1935, 7 U.S.C. § 511m, and the Classification Act of 1949, 5 U.S.C. § 1071, et seq., are omitted since it is believed that the former Act clearly granted the Secretary the requisite authority unim-

peded by the latter Act, and that lengthy discussion of these Acts would only cloud the real issues.

4. Vitarelli v. Seaton, 359 U.S. 535, 79 S. Ct. 968, 3 L.Ed.2d 1012 (1959); Service v. Dulles, 354 U.S. 363, 77 S.Ct. 1152, 1 L.Ed.2d 1403 (1957); United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1954).

ly, this is not a case involving the discharge of employees, but rather it is a case involving the method of compensation of retained employees. Secondly, the plaintiff has failed to show any relevant regulations promulgated by the Secretary of Agriculture or present in the Civil Service Regulations which have not been complied with.[5]

■ Other cases are cited by plaintiff which stand for the proposition that the Secretary of a Department can bind himself and the Government by other actions on his part—such as entering into a contract or making representations to others which induce detrimental reliance.[6] These cases, too, are wide of the mark. The plaintiff certainly was not employed on a contractual basis. No contract of employment has been introduced into the record or seriously contended to the Court in oral argument.

■ Admittedly, there were representations to the plaintiff about the methods to be used to compensate him. He was to be paid at a rate equivalent to the Civil Service ratings of GS–5, GS–7, or GS–9, depending on his experience and expertise. These representations have been fulfilled. The problem comes with the period during which these wages are to be paid. Although there was no explicit promise that he would be indefinitely paid eight months' salary for five months' work, the practice of the Department had been to do just that, and it was known to the plaintiff. However, this fact cannot be construed as a commitment by the Department to continue to follow this policy indefinitely.

■ The plaintiff's cases and arguments are not persuasive that the Department of Agriculture's abolition of old policies relating to inflated payments to seasonal workers is tainted with deceit,

bad faith, or unfairness sufficient to justify an estoppel. It is abundantly reasonable that the doctrine of estoppel should be applied with great caution to the Government and its officials lest the Government be calcified into an arthritic body unable to cope with a changing reality.[7]

### The Reduction in Force Theory

■ Plaintiff also asserts that the Department's change in the wage policy for tobacco inspectors effective for the 1966 season was, in effect, a "reduction in force" within the meaning of the Civil Service Regulations.[8] Section 201 of the relevant regulations governs when the reduction in force procedures are to be used:

"REDUCTION IN FORCE. Subpart. B. General Provisions:

Each agency shall follow this part when it releases a competing employee from his competitive level by separation, demotion, (or) furlough for more 30 days, * * * when the release is required because of a lack of work, or shortage of funds * * *."

Plaintiff argues that the change in his compensation time was a "release from his competitive level" within the meaning of the section quoted, thus bringing the reduction in force procedures into effect. The Court cannot agree that plaintiff was "released from his competitive level" within the meaning of the Regulation. Plaintiff continues to compete at the GS–9 competitive level with the other tobacco inspectors at that grade level. Only the time during which he is to be paid has been changed, as it has for all tobacco inspectors regardless of their competitive level. No tobacco inspectors have been removed or released from their competitive level by this change in the

---

5. See discussion of the "reduction in force" theory, infra, p. 338.

6. Semaan v. Mumford, 118 U.S.App.D.C. 282, 335 F.2d 704 (1964); United States v. Certain Parcels of Land, 131 F.Supp. 65 (S.D.Cal.1955); United States v. Fox Lake State Bank, 7 Cir., 366 F.2d 962 (1966).

7. Butler v. Commonwealth of Pennsylvania, 51 U.S. (10 How.) 402, 416, 13 L.Ed. 472, 478 (1850); Semaan v. Mumford, supra.

8. 5 C.F.R. § 201 et seq.

compensation *time* of the tobacco inspectors. In fact, no reduction in work time is involved at all; only the pay time is changed.

■ The fact that he was furloughed for more than thirty days, or the remainder of the year after the end of the marketing season, is of no significance. If plaintiff had been the only inspector furloughed for more than thirty days, that might be a type of release from competitive level bringing the procedures into play, but all seasonal tobacco inspectors at plaintiff's competitive grade level are furloughed each year for more than thirty days. Yet, the reduction in force procedures have never been applied to tobacco inspectors, nor, to the knowledge of this Court, have the tobacco inspectors ever before complained of the Department's failure to use those procedures.

No merit is found in the plaintiff's reduction-in-force argument. Therefore, the Court does not consider the issue raised by the defendant of whether, in fact, the plaintiff was injured by the Department's failure to use the reduction-in-force procedures.

### Violation of Employee-Management Agreement

The plaintiff also asserts that he is "entitled to seek redress for the violation of his rights" under the Employee-Management Cooperation Agreement, (hereafter the Agreement), entered into between the Tobacco Division of the Department of Agriculture as "Management" and the Federal Tobacco Inspectors Association as the "Union."

This agreement was authorized by an Executive Order promulgated by President Kennedy which set Executive policy to encourage government employees to organize unions and to require certain agencies to consult with the unions "from time to time in the formulation and implementation of personnel policies and practices, and matters affecting working conditions that are of concern to its members."[9] President Kennedy ordered that "[t]he agency and such employee organization, through appropriate officials and representatives, shall meet at reasonable times and confer with respect to personnel policy and practices and matters affecting working conditions, so far as may be appropriate subject to law and policy requirements."[10] However, the order also stated:

"In exercising authority to make rules and regulations relating to personnel policies and practices and working conditions, agencies shall have due regard for the obligation imposed by this section, but such obligation shall not be construed to extend to such areas of discretion and policy as the mission of the agency, its budget, its organization and the assignment of its personnel * * *."[11]

In response to this latter section, the Agreement at issue here contained the proviso that "Management officials of the agency retain the right, in accordance with applicable laws and regulations, * * * (d) to maintain the efficiency of the Government operations entrusted to them, (e) to determine the methods, means and personnel by which such operations are to be conducted * * *."[12]

■ It is apparent to the Court that the Department retained the right to change the compensation time of its seasonal employees by retaining the right to maintain the efficiency of and to determine the methods, means and personnel for the agency's operations.

■ Even if this Court were to find that this was not a retained right, the Agreement only imposed on the Agency the duty to "consult" with the Union, and thus, the plaintiff's only enforcible right

**9.** Executive Order No. 10988, Jan. 18, 1962, 27 F.R. 551, 5 U.S.C. § 631— Note, Section 5(b), p. 91. (See Manhattan-Bronx Postal Union v. Gronouski, 121 U.S.App.D.C. 321, 350 F.2d 451 (1965); cert. den. 382 U.S. 978, 86 S.Ct. 548, 15 L.Ed.2d 469, stating that this executive order created no judicially enforceable rights.)

**10.** Id. p. 92, Section 6(b).

**11.** Ibid.

**12.** Employee - Management Cooperation Agreement, § 1.6, p. 2.

would seem to be that the "Union" might get to "consult" somewhat further with the Department before the same result was obtained. The Court should not order the parties to do a futile thing.

CONCLUSIONS OF LAW

1. The Court has jurisdiction over the matter in controversy by virtue of 28 U.S.C. §§ 1361 and 1391.

2. Plaintiff has failed to establish any right to continue to be compensated on the old basis of eight months' wages for fewer than six months' work on the tobacco markets.

3. The "Employee-Management Cooperation Agreement" does not bestow any right to negotiation over wage rates and compensation time which was violated by the defendant.

4. The reduction in force procedures of 5 C.F.R. § 201 et seq. are not relevant to this change in policy by the Department of Agriculture.

5. Each party will bear his own cost.