Robert L. HICKS, Appellant,

v.

Orville FREEMAN, Secretary of Agriculture of the United States, Appellee.

No. 11866.

United States Court of Appeals
Fourth Circuit.

Argued March 5, 1968.

Decided June 27, 1968.

Robinson O. Everett, Durham, N. C. (William A. Creech, on the brief), for appellant.

Jack H. Weiner, Atty., Dept. of Justice (Edwin L. Weisl, Jr., Asst. Atty. Gen., and Morton Hollander, Atty., Dept. of Justice, and William H. Murdock, U. S. Atty., on the brief), for appellee.

Before SOBELOFF, BOREMAN and CRAVEN, Circuit Judges.

CRAVEN, Circuit Judge:

On November 1, 1965, the Director of the Tobacco Division of the Department of Agriculture issued a directive changing the method of compensation of tobacco inspectors. Robert L. Hicks, who was appointed a tobacco inspector in 1955, brought this action against the Secretary of Agriculture asserting that the change violated his contract of employment. Alternatively, plaintiff pleads estoppel of defendant by a course of conduct from showing the true nature of the contract, the provisions of an Employee—Management Cooperation Agreement, and violation of regulatory procedures governing reduction of pay. It was adjudged in the district court that Hicks was entitled to no relief. We affirm.

Before Hicks accepted appointment in 1955, the Flue-Cured District Supervisor explained to him the terms of employment:

During his initial probationary season, Hicks was to receive six months' salary irrespective of the number of days he actually worked on the tobacco markets.[1] Thereafter, if he qualified to grade two types of flue-cured tobacco (which he did), he would receive eight months' pay; if, in addition, he learned to grade burley tobacco (he did), he would be compensated for a nine-month period if called upon to work the burley market. Hicks testified that he ac-

cepted employment in reliance upon the Supervisor's statement of terms.

During his first year on the job, Hicks was paid at a rate equivalent to a GS–5 rating. In August 1956 he was classified as a "career competitive" employee and given a rating of GS–7; he was promoted to GS–9 in July 1960. At the time of both of these promotions, his Personnel Form 52 stated that his employment would be for "six months or more a year on a continuing basis." [2] Until 1966 Hicks worked on the markets an average of about five months a year, but he was in pay status for approximately eight months; for the remaining four months of each year he was furloughed.

On November 1, 1965, the policy of guaranteeing inspectors a minimum period of pay status was discontinued. Thereafter, according to the directive of the Director of the Tobacco Division, tobacco inspectors were to be paid only for time actually worked.[3] By a form letter dated May 19, 1966, all flue-cured personnel were asked to indicate whether they would be available for work or wished to submit their resignations. Hicks elected to return to work and was in pay status from July 20 to December 12, 1966. The defendant stipulated at trial that after Hicks was furloughed on December 12 other inspectors with less seniority were kept on duty and given further assignments on the burley market.

Clearly, no employment contract has been established that would obligate the Secretary to continue the practice of paying inspectors eight months' salary per annum for a lesser number of months worked. Hicks' evidence fails to establish even that he was bound to work for the Department of Agriculture more than one season at a time. It is hornbook law that a contract

---

1. Apparently, the combination of the unpredictability of market dates and the necessity to provide higher pay to attract competent inspectors led to this unusual arrangement.

2. A Federal employee who is employed for six months or more a year is credited with

a full year of service for retirement purposes; a person employed for less than six months receives credit for less than a full year.

3. The policy had already been changed as to all new recruits in 1963.

terminable at the will of one party is terminable at the will of the other; and "even where the employment is 'permanent' or 'for life' the majority of courts interpret this as being an agreement at will, terminable by either party at his election." 9 Williston, Contracts § 1017 at 131 (3d ed. 1967), and cases there cited. If the contract left the Secretary free to terminate Hicks' employment at the expiration of any season, a fortiori he was free each year to change the method of compensation even though it resulted in diminished pay. See Barnes v. United States, 150 F.Supp. 317, 138 Ct. Cl. 76 (1957).

■ The elements of estoppel are not present here. The only detriment that Hicks has suffered is in the mere passage of time his skills may have diminished in saleable value. Were this a sufficient basis alone for estoppel, few employees with a substantial amount of time on the job could be denied an equity-created tenure unavailable to them at law. Moreover, a "continuing" employment arrangement is not the same thing as a representation that the Government would never change the method of compensation. The latter promise is simply not established, nor may it be implied, we think, from defendant's course of conduct. Compare, Semaan v. Mumford, 118 U.S.App.D.C. 282, 335 F.2d 704 (D.C. Cir. 1964).

■ Hicks also complains that the directive of November 1 was promulgated in violation of the Employee-Management Cooperation Agreement entered into by the Secretary and the Federal Tobacco Inspectors Mutual Association. However, the Agreement specifically says, "Rates of pay or other conditions of employment specifically covered by Federal statute, Executive orders, rules and regulations are not subject to negotiation," but are permissible subjects for consultation. Employee-Management Cooperation Agreement § 4.2 (Oct. 21, 1965)

(Emphasis added). Consultation is defined as "verbal or written discussion with employee representatives for the purpose of obtaining their views and/or *advising of intended actions* of concern to employees in the representation unit." Ibid. (Emphasis added). On October 28, 1965, representatives of the Department of Agriculture met with the Association's representatives and informed them of the pending directive. The Deputy Administrator for Marketing Services, who explained the directive, said, "We are instructed to tell you without equivocation that beginning July 1, 1966 new periods of employment for all seasonal tobacco inspectors will be in compliance with this directive. This directive comes from the Secretary. We have *no choice in the matter. It is entirely out of our hands. There is no need to come back to us. Our hands are tied. This action was taken way above our heads."* Minutes of Executive Committee Meeting with Management, October 28, 1965, Plaintiff's Exhibit 7. Although we are quite convinced that such a statement is not commensurate with negotiation, within the language of the Agreement quoted above it is clearly consultation and all that the Agreement required of the Secretary.

■■ Hicks' contention that the Secretary was required to follow standard reduction-in-force procedures in determining which inspectors were to be given further assignments on the burley market is, we think, equally unfounded. The Code of Federal Regulations purports to establish a procedure that an agency is required to follow "when it releases a competing employee from his competitive level by * * * furlough for more than thirty days." 5 C.F.R. § 351.201(a). However, an exception is made for *seasonal* employees in the Civil Service Commission Federal Personnel Manual, ch. 715, subchapter 3–3(d),[4] and the Department of Agriculture Regulations, ch.

---

4. "Intermittent, seasonal, and part-time employees. Furlough does not apply to employees serving on an intermittent, seasonal, or part-time basis when the administrative action to relieve them from duty conforms to the conditions of employment established in their appointments." Ibid.

35, subchapter 2–2d(2).[5]  These documents are apparently not filed with the Federal Register nor are they published in C.F.R., but this fact does not limit their efficacy since reduction-in-force procedures are "related solely to * * * internal personnel rules and practices," 5 U.S.C.A. § 552(b), and "have no general applicability and legal effect."  44 U.S.C.A. § 305(a).  Compare, United States v. Aarons, 310 F.2d 341 (2d Cir. 1962) with United States v. Hayes, 325 F.2d 307 (4th Cir. 1963).

Affirmed.

5.  *"Furloughs of seasonal employees.*  Furloughs in excess of 30 days may be made without regard to reduction-in-force procedure for employees who were appointed on a seasonal basis when such seasonal limitation has been recorded on the personnel notification."  Ibid.