STATE OF NORTH CAROLINA, EX REL. MICHAEL F. EASLEY, ATTORNEY GENERAL, PLAINTIFF V. RICH FOOD SERVICES, INC., DEBRA K. SINGLETARY, ROY BALDWIN, VERNICK FINANCIAL SERVICES, KEARNEY CREDIT INCORPORATED, AND FAIR FINANCE COMPANY, DEFENDANTS

No. COA99-1021

(Filed 29 August 2000)

**1. Appeal and Error— partial summary judgment—possibility of inconsistent verdicts**

The appeal of a partial summary judgment was addressed on its merits where it was reasonably foreseeable that inconsistent verdicts could result if the appeal was dismissed. If the case proceeded to trial, the State might obtain a verdict against defendants Rich and Singletary, but the defendants for whom summary judgment was granted would not be bound and, should those summary judgments then be reversed, those defendants would be entitled to a new trial on the same issues.

**2. Unfair Trade Practices— retail installment sales contracts—liability of finance company purchasing contract**

The trial court erred by granting partial summary judgment for finance companies which had been included as parties to a Chapter 75 action brought by the Attorney General against a retail food installment sale company where the finance companies had purchased retail installment sales contracts from the food company. Although the finance companies argued that there was no showing that they participated in any deceptive practices, under N.C.G.S. § 25A-25 the purchased contracts were subject to the same claims and defenses that consumers could assert against the seller. The provisions of Chapter 75 authorize the Attorney General to bring a civil action on behalf of North Carolina consumers to enforce the prohibition against deceptive sales practices, and the finance companies here must be parties to the litigation in order to provide a full and meaningful remedy to the consumers for whom the Attorney General is acting.

**3. Estoppel— investigation of retail installment sales company—no notice to finance company—action by Attorney General not barred**

The Attorney General's claims against finance companies who purchased retail installment sales contracts from a door-to-door food plan company were not barred by equitable estoppel,

STATE ex rel. EASLEY v. RICH FOOD SERVS., INC.

[139 N.C. App. 691 (2000)]

and the trial court erred by granting partial summary judgment for them, where the Attorney General did not notify the finance companies of its investigation of the food company for two-and-a-half years prior to filing the suit, during which time the finance companies continued to accept assignment of contracts from the food company to their prejudice. There were no allegations in the answer of defendant finance companies which would support the elements of equitable estoppel and the trial court erred insofar as estoppel was the basis for its judgment. Moreover, N.C.G.S. § 25A-25 does not require notice to an assignee of commercial paper that the seller is being investigated for violations of Chapter 75, and estoppel normally does not act to bar the actions of the State or its agencies.

**4. Damages and Remedies— election of remedies—deceptive sales practices—partial settlement**

The trial court erred by granting partial summary judgment for defendant finance companies in a Chapter 75 action against a retail installment sales food company and the assignees of its contracts where the finance companies argued that the Attorney General elected his remedies by entering into a consent agreement with the food company enjoining certain sales practices and requiring that existing contracts be honored. Defendants did not plead an election of remedies in bar of plaintiff's claims, and, even if the plea of election of remedies was properly before the Court of Appeals, it was premature because a plaintiff in a deceptive sales practices action under N.C.G.S. § 75-1.1 may allege inconsistent remedies and need not make its election until prior to jury instructions or after return of the verdict.

**5. Unfair Trade Practices— retail installment sales company—employee—proper party**

The trial court erred by granting summary judgment for defendant Baldwin in an action brought by the Attorney General arising from the retail installment sales of food products where Baldwin contended that he should not have been a party to the litigation because the Attorney General is not authorized to bring an unfair and deceptive trade practices action against him as an employee and that there was insufficient evidence that he acted as a managing agent of the food company. The plain language of N.C.G.S. § 75-9 allows the Attorney General to investigate agents, officers, and employees of corporations and its is unlikely that the Legislature would have authorized investigations

without intending that such persons be held to answer for violations of Chapter 75. Furthermore, there was ample evidence that Baldwin was a key agent and employee of the food company; his effort to minimize his management role at most raises a question of fact.

Appeal by plaintiff from orders entered 12 May 1999 and 13 May 1999 by Judge Howard E. Manning, Jr., in Wake County Superior Court. Heard in the Court of Appeals 6 June 2000.

On 2 April 1998, the State of North Carolina, on relation of Attorney General Michael F. Easley, filed this civil action on behalf of North Carolina consumers against Rich Food Services, Inc., Debra Singletary, Roy Baldwin, and three finance companies: Vernick Financial Services, Kearney Credit Incorporated, and Fair Finance Company. The verified complaint alleged that defendant Rich Food Services, Inc. (Rich Food), is a Wyoming corporation with its principal place of business in Knightdale, North Carolina. Defendant Debra Singletary (Singletary) is the president, director and majority shareholder of Rich Food. The complaint alleged that defendant Roy Baldwin (Baldwin) is a "managing agent" for Rich Food who "exerts authority and control over the operations of" Rich Food. The State also submitted evidence that Baldwin advised Singletary, developed policy and training materials, hired and directed the sales force, and conducted many of Rich Food's dealings with its franchiser, the defendant finance companies and consumers.

Rich Food is engaged in the business of door-to-door sales of home food service plans, freezers, cookware, and other services and goods. During its in-home sales presentations, Rich Food offers potential customers a large order of frozen foods including bulk meat, fruits, vegetables, beef, poultry, seafood, pork and "specialty items." The food plans do not include many of the items consumers usually purchase at the grocery store, such as dairy items, cereal, flour, spices, cleaning fluids, dish detergent, and paper products. Rich Food also represents that all food will be frozen, packaged, delivered to the customer's home and placed in the customer's freezer by agents of Rich Food. Rich Food offers discounts on future food purchases, sells freezers to its customers and offers them limited warranties on freezer repairs.

The Rich Food salesperson gives numerous booklets and documents to purchasers, but does not provide buyers a single document which discloses the price of the individual food items, service

charges, or the total plan price. The parties disagree about whether Rich Food was required to summarize all transactions in one document. After each customer's three-day right to cancel expires, Rich Food delivers the purchases to the consumer's home.

Rich Food offered financing of its retail installment sales contracts through various finance companies. Defendants Vernick Financial Services (Vernick), Kearney Credit Incorporated (Kearney), and Fair Finance Company (Fair Finance) have purchased retail installment sales contracts from Rich Food.

At the time it filed its Answer in this case, Rich Food did not maintain contractual liability insurance or reimbursement insurance to guarantee that it could meet future obligations and fulfill its warranties. In addition to alleging that Rich Food sold "insurance" in violation of statutory provisions, the State alleged—among other things—that Rich Food's sales practices deceived purchasers by representing to them that they would save money with the Rich Plan, by failing to disclose the unit price of the food sold, and by misrepresenting the value of the goods and services being sold.

On 12 May 1998, Rich Food, Baldwin, and Singletary, entered into an Order for Preliminary Injunction by Consent, which provided in part that they would honor the membership and service agreements they had sold to consumers pending the outcome of this litigation.

On 5 March 1999, defendant finance companies filed a joint motion for summary judgment on the grounds that there was no genuine issue of material fact and that they were entitled to judgment as a matter of law. On 31 March 1999, plaintiff also filed a motion for summary judgment against all defendants. The State supported its motion for summary judgment with the affidavits of 26 disgruntled consumers who had made purchases from defendant Rich Food. On 12 May 1999, the trial court entered summary judgment in favor of defendant Roy Baldwin and denied plaintiff's motion for summary judgment against Rich Food on the issue of damages, civil penalties and attorney fees. The trial court granted summary judgment for the plaintiff on the issue of whether the Rich Plan Service Agreement constitutes "insurance" within the meaning of Chapter 58 of the North Carolina General Statutes. On the following day, the trial court denied plaintiff's motion for summary judgment as to Debra Singletary and granted partial summary judgment in favor of the three defendant finance companies. Plaintiff timely filed notice of appeal, assigning error.

STATE ex rel. EASLEY v. RICH FOOD SERVS., INC.

[139 N.C. App. 691 (2000)]

*Attorney General Michael F. Easley, by Assistant Attorneys General Barbara A. Shaw and K. D. Sturgis, for the State.*

*Allen & Pinnix, P.A., by D. James Jones, Jr., for Roy Baldwin defendant appellee; and Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, L.L.P., by Robin K. Vinson, for Vernick Financial Services, Kearney Credit Incorporated and Fair Finance Company defendant appellees.*

HORTON, Judge.

[1] Plaintiff argues the trial court erred in granting summary judgment for Roy Baldwin and partial summary judgment for the defendant finance companies. Defendants contend, however, that we should dismiss the State's appeal without reaching its merits, because the entries of summary judgment are merely interlocutory orders, from which no appeal of right lies.

"An interlocutory order is one made during the pendency of an action, which does not dispose of the case, but leaves it for further action by the trial court in order to settle and determine the entire controversy." *Veazey v. Durham*, 231 N.C. 357, 362, 57 S.E.2d 377, 381, *reh'g denied*, 232 N.C. 744, 59 S.E.2d 429 (1950). "An appeal does not lie to the [appellate courts] from an interlocutory order of the Superior Court, unless such order affects some substantial right claimed by the appellant and will work an injury to him if not corrected before an appeal from the final judgment." *Id.*

Plaintiff contends that it has a substantial right to avoid the possibility of two trials on the same issues. " 'Ordinarily the possibility of undergoing a second trial affects a substantial right only when the same issues are present in both trials, creating the possibility that a party will be prejudiced by different juries in separate trials rendering inconsistent verdicts on the same factual issue.' " *Turner v. Norfolk S. Corp.*, 137 N.C. App. 138, 142, 526 S.E.2d 666, 670 (2000) (citation omitted). Here, it is reasonably foreseeable that, if we dismiss this appeal and defer consideration of the errors assigned by the State, inconsistent verdicts might well result.

The State contends, among other things, that Rich Food, its President Singletary, and Managing Agent Baldwin, have violated the provisions of Chapters 75 and 58 of our General Statutes by engaging in a pattern of deceptive practices and by selling insurance without being licensed to do so. The State seeks to enjoin such practices, can-

cel contracts entered into in violation of law, and obtain restitution for consumers. The State further contends that it cannot obtain full relief for consumers injured by the actions of Rich Food without the presence of the defendant finance companies because they are the assignees of the contracts in question. As we will discuss more fully below, the State contends that the defendant finance companies are subject under the provisions of N.C. Gen. Stat. § 25A-25 to the same claims and defenses which can be asserted against Rich Food. However, if we dismiss the State's appeal as premature, the defendant finance companies would not be bound by any verdict or judgment against Rich Food. A later reversal of the entries of partial summary judgment which are the subject of this appeal would then necessitate another trial on the same issues, with the possibility of inconsistent verdicts.

Likewise, as to the defendant Baldwin, a subsequent trial against him would involve many of the same issues involved in the trial of the charges against Rich Food, because the State contends that Baldwin has engaged in the same deceptive acts as Rich Food.

In summary, if the case proceeds to trial in its present posture, the State might well obtain a verdict and judgment against Rich Food and Singletary, but the defendant finance companies and Baldwin would not be bound by its terms. Should we then reverse the orders of the trial court granting summary judgment for Baldwin and for the finance company defendants, those defendants would be entitled to a new trial on the same issues. That is particularly true in the case of the defendant finance companies, as those defendants have requested a trial by jury. Therefore, we hold that inconsistent verdicts might well result from a fragmentation of the trial of this matter, and we will address this appeal on its merits.

I.

[2] Defendant finance companies first contend that they may not properly be included as parties to this action against Rich Food and its officials. The defendant finance companies argue that there is no showing they have participated in any deceptive practices, nor were they put on notice that the Attorney General was investigating Rich Food for possible violations of Chapter 75. Thus, they argue the State is estopped from seeking to cancel the retail sales contracts and seeking restitution from them. We disagree, and reverse the entry of summary judgment in their favor.

STATE ex rel. EASLEY v. RICH FOOD SERVS., INC.

[139 N.C. App. 691 (2000)]

In 1969, our General Assembly amended Chapter 75 by adding N.C. Gen. Stat. § 75-1.1, which declared unfair or deceptive acts or practices affecting trade or commerce to be unlawful. 1969 N.C. Sess. Laws ch. 833. The section was amended in 1977 to strike the reference to "trade," and thus to broaden the scope of the statute. N.C. Gen. Stat. § 75-16 (1999) allows any person, firm or corporation injured by the act of another to "have a right of action on account of such injury done, and if damages are assessed in such case judgment shall be rendered in favor of the plaintiff and against the defendant for treble the amount fixed by the verdict." *Id.* It is obvious that the Legislature intended to provide a civil means to encourage ethical dealings between persons engaged in business and the consuming public within the State and to enable a person injured by deceptive acts or practices of such business people to recover treble damages from a wrongdoer. *Hardy v. Toler,* 24 N.C. App. 625, 630, 211 S.E.2d 809, 812-13, *modified on other grounds,* 288 N.C. 303, 218 S.E.2d 342 (1975). The provisions for trebled damages and for an allowance of attorney fees enable private citizens to obtain counsel and prosecute actions which might otherwise involve prohibitive expense.

In addition to the power of individual consumers to bring actions for alleged unfair or deceptive practices, the Attorney General is both authorized and directed to investigate "all . . . corporations or persons in North Carolina doing business in violation of law . . . ." N.C. Gen. Stat. § 75-9 (1999). The Attorney General may prosecute civil actions in the name of the State to obtain mandatory orders, such as injunctions and restraining orders, to carry out the provisions of Chapter 75. N.C. Gen. Stat. § 75-14 (1999). Chapter 114 of our General Statutes also empowers the Attorney General

> [t]o intervene, when he deems it to be advisable in the public interest, in proceedings before any courts, regulatory officers, agencies and bodies, both State and federal, in a representative capacity for and on behalf of the using and consuming public of this State. He shall also have the authority to *institute and originate proceedings* before such courts, officers, agencies or bodies and shall have authority to appear before agencies on behalf of the State and its agencies and citizens in all matters affecting the public interest.

N.C. Gen. Stat. § 114-2(8)(a) (1999) (emphasis added).

Clearly, the Attorney General had authority on behalf of the State, to institute this action against Rich Food, which he contends

has engaged in a continuing pattern of violations of N.C. Gen. Stat. § 75-1.1 (1999). The defendant finance companies argue, however, that the Act did not contemplate the maintenance of such an action against defendants who have not participated in the deceptive practices.

The State premises liability of the finance companies on N.C. Gen. Stat. § 25A-25 (1999), which provides that:

> (a) In a consumer credit sale, a buyer may assert against the seller, assignee of the seller, or other holder of the instrument or instruments of indebtedness, any claims or defenses available against the original seller, and the buyer may not waive the right to assert these claims or defenses in connection with a consumer credit sales transaction. Affirmative recovery by the buyer on a claim asserted against an assignee of the seller or other holder of the instrument of indebtedness shall not exceed amounts paid by the buyer under the contract.

> (b) Every consumer credit sale contract shall contain the following provision in at least ten-point boldface type:

> NOTICE

> ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

*Id.* The State argues that it may, pursuant to N.C. Gen. Stat. § 25A-25, assert its claims for unfair and deceptive trade practices both against the original seller (Rich Food) and against defendant finance companies as assignees of Rich Food. Further, the State contends that it is entitled pursuant to N.C. Gen. Stat. § 75-15.1 to seek cancellation of contracts and restitution on behalf of consumers injured by unfair and deceptive trade practices. The trial court disagreed with the State's position, however, and granted partial summary judgment in favor of defendants "as to any claims against them for money damages or restitution damages (affirmative damages) arising out of any of the transactions complained of prior to the date of the institution of this action and service of the complaints upon each separate defendant." In effect, the trial court ruled that the plaintiff could

STATE EX REL. EASLEY v. RICH FOOD SERVS., INC.

[139 N.C. App. 691 (2000)]

maintain its action against defendant finance companies for cancellation and restitution relating to assignments of retail credit transactions entered into *after* the service of process on the individual finance company. The finance companies did not appeal from the ruling of the trial court as to their inclusion of defendants for the purposes of possible future liability, and the question is thus not before us. However, for the sake of clarity in this important area, we will consider the power of the Attorney General to include financial institutions as parties in an action pursuant to N.C. Gen. Stat. § 75-1.1 on behalf of North Carolina consumers.

As both Chapters 75 and 25A-25 share the common purpose of protecting consumers, we are to read the statutes *in pari materia* ("in the same matter," Black's Law Dictionary 794 (7th ed. 1999)). *Williams v. Williams*, 299 N.C. 174, 180, 261 S.E.2d 849, 854 (1980); *see also Marshall v. Miller*, 302 N.C. 539, 547, 276 S.E.2d 397, 402 (1981) (violation of certain statutes designed to protect consumers also constitutes a violation of unfair and deceptive trade practices). Since the plain language of N.C. Gen. Stat. § 25A-25 suggests that the defendant finance companies are subject to any claim or defense which might be asserted against Rich Food, and plaintiff has stated a cause of action against Rich Food for unfair or deceptive business practices, plaintiff may assert those same claims against the finance companies. If plaintiff is successful in the litigation, N.C. Gen. Stat. § 75-15.1 (1999) provides that the trial court may "upon a final determination of the cause, order the restoration of any moneys or property and the cancellation of any contract obtained by any defendant as a result of such violation." *Id.* In order for the consumers on whose behalf the State has instituted this litigation to obtain a full remedy, the three named finance companies must be bound by the results of the litigation, and must therefore be parties defendant.

The issue of whether the State is authorized to bring this action against defendant finance companies appears to be one of first impression in this jurisdiction. However, several of our sister states with similar statutory schemes have addressed this issue in well-reasoned and instructive opinions. In *State ex rel. McGraw v. Scott Runyon Pontiac-Buick, Inc.*, 194 W.Va. 770, 461 S.E.2d 516 (1995), the West Virginia Attorney General sued an automobile dealership for unfair and deceptive trade practices arising from the allegedly unlawful sale of extended warranties for motor vehicles. General Motors Acceptance Corporation and Citizens National Bank of St. Albans (later, Bank One), both of which financed the sales of extended war-

STATE ex rel. EASLEY v. RICH FOOD SERVS., INC.

[139 N.C. App. 691 (2000)]

ranties by the dealership, were named as additional defendants. The Supreme Court of West Virginia observed that West Virginia law requires finance companies to purchase consumer credit " 'subject to all claims and defenses of the buyer or lessee against the seller or lessor[,]' " and held that "the Attorney General clearly has the right to bring a civil action against an assignee to collect a *refund* of an excess charge imposed upon a consumer *regardless of whether the assignee committed any wrongdoing.*" *McGraw*, 194 W.Va. at 779, 461 S.E.2d at 525 (citation omitted) (emphasis added). In so holding, the Court reasoned that

> [l]ogic and experience dictate that if the types of lawsuits which the Attorney General could bring under the CCPA [Consumer Credit and Protection Act] did not include lawsuits against financial institutions such as the defendants, these institutions could, if unsavory, run in effect a "laundry" for "fly-by-night" retailers that seek to excessively charge their customers. Consequently, the real meaning of consumer protection would be stripped of its efficacy.

*Id.* at 780, 461 S.E.2d at 526. As additional bases for its holding, the *McGraw* Court reasoned that

> logic dictates that the burden of cost of the seller's misconduct in violation of the CCPA may be placed on the financing party to the transaction. Financing parties, more so than consumers, are in a position to police the activities of the seller-retailer and to protect themselves against misconduct.

*Id.* Finally, the *McGraw* Court notes that consumer claims seeking refunds often involve small sums, and an action by the Attorney General is a "practical way" to litigate such matters. *Id.*

In another case, *State v. Excel Management Services*, 111 Wis. 2d 479, 331 N.W.2d 312 (1983), the Wisconsin Attorney General sued a seller of swimming pools, alleging that it used deceptive trade practices. The Supreme Court of Wisconsin observed that, under applicable Wisconsin statutes, First Savings purchased the sales contracts from the seller " 'subject to all claims and defenses of the buyer or his successor in interest' " and thus could be held responsible for the seller's deceptive trade practices. *Excel*, 111 Wis. 2d at 487, 331 N.W.2d at 316 (citation omitted). The Court noted that Wisconsin law provides that " '[t]he court may in its discretion, prior to entry of final judgment make such orders or judgments as may be necessary to

STATE EX REL. EASLEY v. RICH FOOD SERVS., INC.

[139 N.C. App. 691 (2000)]

restore to any person any pecuniary loss suffered because of the acts or practices involved in the action . . . .' " *Id.* at 486, 331 N.W.2d at 315 (citation omitted). Consistent with that purpose, the Court concluded that the Wisconsin Attorney General was authorized to sue First Savings in order to assist consumers in recovering their pecuniary losses. *Id.* at 488, 331 N.W.2d at 316.

In another case, *State v. Custom Pools*, 150 Vt. 533, 556 A.2d 72 (1988), the Vermont Attorney General sued a seller of above-ground pools for deceptive "bait-and-switch" tactics. Additional defendants were two financing parties. The trial court dismissed the action as to the financing parties on the grounds they had not committed unlawful practices. In reversing, the Supreme Court of Vermont stated, "[t]he Legislature intended to place the burden of the cost of seller misconduct violative of the Consumer Fraud Act on the financing parties to the transaction. Such parties, unlike consumers, are in a position both to police the activities of the seller and to protect themselves against misconduct." *Id.* at 536-37, 556 A.2d at 74.

In the case before us, the defendant finance companies purchased the retail installment sales contracts from the seller, Rich Food, subject to the same claims and defenses that consumers could assert against the seller, defendant Rich Food. N.C. Gen. Stat. § 25A-25. Therefore, it seems clear that an individual consumer could bring an action against Rich Food for fraudulent and deceptive sales practices, and include the assignee of the consumer's retail sales contract as a defendant. Without the presence of the financing party, a full remedy, including cancellation of the sales contract and restitution for payments pursuant to the invalid contract, would not be available to the consumer. The express provisions of Chapter 75 authorize the Attorney General to bring a civil action on behalf of North Carolina consumers to enforce the Chapter's prohibition against deceptive sales practices. We now hold that in such an action the Attorney General may join as party defendants the assignees of sales contracts which were allegedly obtained in violation of Chapter 75.

Our position is supported by the reasoning of the West Virginia Supreme Court in *McGraw*. Insulating the financing parties who are assignees of sales contracts from liability would allow unscrupulous sellers to "launder" their unlawfully obtained contracts and would vitiate the public policy expressed in N.C. Gen. Stat. § 25A-25. Although the financing parties may not be involved in the deceptive practices of a seller, such financing parties are in a better position than consumers to "police" the activities of the sellers with whom

they deal and protect themselves from loss. Thus, as between an innocent consumer and innocent financing party, the burden of loss must fall on the financing party. The financing party must then look to the seller to be made whole.

Although Chapter 75 gives a broad remedy to an aggrieved consumer, and seeks to make that remedy more attractive through the possibility of treble damages and attorneys' fees, the individual amounts involved in these consumer cases may make prosecution difficult. The Attorney General may, however, seek recovery on behalf of a large group of injured consumers, and may secure injunctive relief in protection of prospective customers. Thus, the resources of the State are brought to the aid of consumers who might be unable otherwise to obtain full redress for their losses.

Our position is also consistent with the provision of Chapter 75 that "[i]n any suit instituted by the Attorney General to enjoin a practice alleged to violate G.S. 75-1.1, the presiding judge may, upon a final determination of the cause, order the restoration of any moneys or property and the cancellation of any contract obtained by *any defendant* as a result of such violation." N.C. Gen. Stat. § 75-15.1 (emphasis added). In order to provide a full and meaningful remedy to the consumers on whose behalf the Attorney General is acting, and to do complete justice between the parties, the defendant finance companies must be parties to this litigation and thus be bound by any orders of restitution or cancellation entered by the trial court.

[3] Defendant finance companies contend, however, that the doctrine of equitable estoppel bars plaintiff's claims against them. Equitable estoppel arises when a party " 'by acts, representations, admissions, or by silence . . . induces another to believe that certain facts exist, and such other person rightfully relies and acts upon that belief to his or her detriment.' " *Lewis v. Jones*, 132 N.C. App. 368, 372, 512 S.E.2d 87, 90 (1999) (citation omitted). Defendants argue that plaintiff "failed to inform the Finance Company Defendants that it was investigating Rich Food Services, Inc. for over the two-and-a-half years immediately prior to filing this suit." Defendants also argue, and the trial court apparently agreed, that they were prejudiced by the Attorney General's failure to notify them that the State was investigating Rich Food, that they continued to accept assignment of contracts from Rich Food to their prejudice, and that plaintiff should be estopped to seek cancellation of any of the contracts or to seek restitution for the involved consumers.

STATE ex rel. EASLEY v. RICH FOOD SERVS., INC.

[139 N.C. App. 691 (2000)]

The essential elements of estoppel are (1) conduct on the part of the party sought to be estopped which amounts to a false representation or concealment of material facts; (2) the intention that such conduct will be acted on by the other party; and (3) knowledge, actual or constructive, of the real facts. The party asserting the defense must have (1) a lack of knowledge and the means of knowledge as to the real facts in question; and (2) relied upon the conduct of the party sought to be estopped to his prejudice. *Friedland v. Gales*, 131 N.C. App. 802, 807, 509 S.E.2d 793, 796-97 (1998).

Although defendants now attempt to raise the defense of estoppel in their brief to this Court, they did not plead estoppel as an affirmative defense in their answer, as required by our Rules of Civil Procedure. Rule 8(c) provides in pertinent part that "[i]n pleading to a preceding pleading, a party shall set forth affirmatively . . . estoppel . . . and any other matter constituting an avoidance or affirmative defense." N.C. Gen. Stat. § 1A-1, Rule 8(c) (1999). Where estoppel is not raised as a defense in the answer, a defendant may not raise it for the first time in this Court. *Forbes v. Par Ten Group, Inc.*, 99 N.C. App. 587, 598, 394 S.E.2d 643, 649 (1990), *disc. review denied*, 328 N.C. 89, 402 S.E.2d 824 (1991). Although defendant finance companies did not affirmatively plead estoppel, it appears that the trial court relied on an estoppel theory in its partial grant of summary judgment for them "as to any claims against them for money damages or restitution damages (affirmative damages) arising out of any of the transactions complained of <u>prior to the date of the institution of this action and service of the complaints upon each separate defendant</u>." There are no allegations in the answer of defendant finance companies which would support the elements of an equitable estoppel. Thus, insofar as estoppel was the basis for the trial court's partial grant of summary judgment, the trial court erred.

In any event, N.C. Gen. Stat. § 25A-25 does not require that notice be provided to a financial party which is an assignee of commercial paper, such as retail sales contracts; that the seller of that paper is being investigated for violations of Chapter 75; and that a lawsuit against both the seller and its assignee may occur. In the usual case, it appears that the transaction giving rise to an alleged violation of Chapter 75 would occur prior to the institution of a civil action to seek affirmative relief from the transaction. In the present case, the delay before this action was filed may be attributed to the extensive investigation undertaken by the Consumer Protection Division of the Attorney General's Office, the efforts to obtain information from Rich

Food, and intensive—although unsuccessful—efforts to arrive at a fair resolution of the issues involved in this case. Although defendant finance companies complain that they were unjustly prejudiced by plaintiff's failure to give them notice of the ongoing investigation, they did not plead plaintiff's alleged inaction in bar of this claim as required. We note that estoppel does not normally operate to bar the actions of the State or its agencies, and arises only "if such an estoppel will not impair the exercise of the governmental powers of the county." *Washington v. McLawhorn*, 237 N.C. 449, 454, 75 S.E.2d 402, 406 (1953). *See also Hicks v. Freeman*, 273 F. Supp. 334, 338 (M.D.N.C. 1967) ("estoppel should be applied with great caution to the Government and its officials"), *aff'd*, 397 F.2d 193 (4th Cir. 1968), *cert. denied*, 393 U.S. 1064, 21 L. Ed. 2d 707 (1969).

[4] Likewise, defendant finance companies now seek to argue that plaintiff has elected its remedy by entering into a consent judgment with Rich Food enjoining certain sales practices, and requiring that Rich Food honor the terms of contracts to which Rich Food has already entered. Again, we note that the defendant appellants did not plead an election of remedies in bar of plaintiff's claims against them. Election of remedies is merely a form of estoppel, which must be pled as an affirmative defense under the provisions of Rule 8. *See Baker v. Edwards*, 176 N.C. 229, 233-34, 97 S.E.2d 16, 18 (1918); N.C. Gen. Stat. § 1A-1, Rule 8(c).

Further, in an action under N.C. Gen. Stat. § 75-1.1 based on deceptive sales practices, a plaintiff may allege inconsistent remedies, and need not make its election until either prior to jury instructions or after return of the jury verdict. *See First Atl. Mgmt. Corp. v. Dunlea Realty Co.*, 131 N.C. App. 242, 256-57, 507 S.E.2d 56, 65-66 (1998) ("entry of summary judgment against plaintiff on its unfair and deceptive trade practices claim would be inappropriate on the basis of inconsistent remedies."). Thus, even if defendants' plea of election of remedies were properly before us, it is prematurely made.

In summary, we hold that the trial court erred in granting partial summary judgment in favor of defendants Vernick Financial Services, Kearney Credit Incorporated and Fair Finance Company as to transactions which occurred prior to the institution and service of this action, and reverse its ruling.

II.

[5] The State also contends that the trial court erred in granting summary judgment in favor of defendant Roy Baldwin. Baldwin

STATE ex rel. EASLEY v. RICH FOOD SERVS., INC.

[139 N.C. App. 691 (2000)]

argues that he should not be a party to this litigation for two reasons. First, he contends that the Attorney General is not authorized to bring a Chapter 75 action for unfair and deceptive trade practices against him as an employee of defendant Rich Food. Second, Baldwin contends there is, in any event, insufficient evidence to show that he acted as a "managing agent" of Rich Food during the times relevant to this action. We do not agree, but will discuss each of his contentions.

N.C. Gen. Stat. § 75-9, which sets out the broad authority of the Attorney General to investigate possible violations of Chapter 75, provides in part that it is the duty of the Attorney General to "investigate . . . the affairs of all corporations or persons doing business in this State . . . in violation of law . . . ." *Id.* The purpose of such investigation is to "acquir[e] such information as may be necessary to enable him to prosecute any such corporation, *its agents, officers and employees* for crime, or prosecute civil actions against *them* if he discovers *they* are liable and should be prosecuted." *Id.* (emphasis added).

The plain language of the statute allows the Attorney General to prosecute "agents, officers and employees" of corporations in either criminal or civil actions. Further, it is unlikely that the Legislature would have authorized the Attorney General to investigate "persons," without intending that such "persons" might be held to answer for their violations of Chapter 75. That could result in a situation where an alleged wrongdoer who held all the stock in a "shell" corporation could successfully plead the corporate existence in bar, and argue that only the corporation could be the subject of a lawsuit.

Further, there is ample evidence in this record that the defendant Baldwin was a key agent and employee of Rich Food. The State's proffer of evidence tends to show that Baldwin executed the franchise agreement between Rich Food and its franchisor. Baldwin was employed by Rich Food from 1996 through mid-1998. A former employee of Rich Food stated that Baldwin "ran the business . . . and made the decisions." Baldwin himself stated in his deposition that he advised President Singletary, developed corporate policy, instructed sales managers and employees, led sales meetings, developed the compensation program for salespersons, signed employment contracts, loaned money to the company, and acted as a trouble-shooter. Further, he transferred a customer list from his previous corporation to Rich Food for no consideration. In response,

Baldwin filed an affidavit with the trial court stating that he was not an officer, stockholder, or director of Rich Food and that he did not *personally* make sales to consumers. Although Baldwin now seeks to minimize his management role in Rich Food, his allegations at most raise a question of fact to be resolved by the trier of fact. Summary judgment in favor of Baldwin was improvidently entered, and is reversed.

Reversed and remanded.

Judges GREENE and HUNTER concur.